[670 NYS2d 414]

In the Matter of PHILIP E. PARKER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 26, 1998

### APPEARANCES OF COUNSEL

*Jorge Dopico* of counsel (*Hal R. Lieberman,* attorney), for petitioner.

*Murray Richman* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, who was admitted to the practice of law in the State of New York by the First Judicial Department on March 21, 1960, was served with a notice and statement of charges al-

leging, *inter alia*, that he violated Code of Professional Responsibility DR 3-101 (A) (22 NYCRR 1200.16) by aiding a nonlawyer in the unauthorized practice of law; DR 3-102 (A) (22 NYCRR 1200.17) by sharing legal fees with a nonlawyer; DR 6-101 (A) (3) (22 NYCRR 1200.30) by neglecting a legal matter entrusted to him; DR 7-101 (A) (1) and (3) (22 NYCRR 1200.32) by intentionally failing to seek the lawful objectives of his client through reasonably available means; and DR 9-102 (C) (4) (22 NYCRR 1200.46) by failing to promptly pay or deliver to his client properties requested by her. Respondent denied all the charges in his answer.

All of the charges pertain to respondent's representation of Mae Ola Hunter, whose home in Mount Vernon was scheduled to be auctioned at a foreclosure sale to be held on Monday, October 24, 1994 at 9:30 A.M. Two days prior to the scheduled sale, on Saturday, October 22, 1994, Richard Rossbach, who was engaged in the business of seeking profit opportunities in such situations, came to Mrs. Hunter's house and offered to purchase her home. Since Rossbach's plan was to seek adjournment of the foreclosure by reason of an impending sale that would provide the necessary funds to pay the lender, it was imperative for him to have a contract signed before 9:00 A.M. Monday. To this end, he attempted to call his lender, a certain Kevin Fitzpatrick who did business as the "Mortgage Man", for his suggestion as to an attorney to represent Mrs. Hunter in the sale of her home.

Respondent's law office was in the same building occupied by Fitzpatrick and respondent occasionally closed loans in transactions with Fitzpatrick. Respondent and Fitzpatrick also shared the services of one Paul Butler, a onetime lawyer who had resigned from the Bar following a Federal felony conviction.

Butler took Rossbach's call for Fitzpatrick, who was not in the office, and informed Rossbach that he did paralegal work for respondent. As a result, respondent was "retained" to represent Mrs. Hunter in the sale to Rossbach's company, FRC Holding Corp. Respondent was not available over the weekend and would not be available. for a face-to-face consultation on Monday. Therefore, Butler prepared the contract which was signed by Mrs. Hunter and Rossbach at respondent's office that afternoon. On Monday, Butler went with Rossbach to the Westchester County courthouse and persuaded the finance company to adjourn the foreclosure proceeding. Respondent testified that during this period, Butler was proceeding under his supervision and direction as a result of telephone consultation.

The closing of the sale by Mrs. Hunter to Rossbach's company took place at respondent's office with respondent and Butler both in attendance, representing Mrs. Hunter. At the closing, Mrs. Hunter received $6,444.05 in net proceeds after payment of the mortgage and closing adjustments, some $1,500 having been deducted from the proceeds as a fee to respondent to clear an old mortgage that she and her deceased husband had apparently paid, but with respect to which she lacked evidence of payment.

Respondent undertook to the title insurance company to clear the old mortgage through a "bar claim" proceeding and on that basis the title company removed the mortgage as an "exception" to their insurance. An additional $6,000 was held by Rossbach from the amount payable to Mrs. Hunter to assure him of obtaining possession of the property since she was unable to deliver immediate possession.

At some time after the closing, Mrs. Hunter vacated the premises and Rossbach tendered the $6,000 to her against delivery of a general release. However, Mrs. Hunter's daughter, a legal secretary, persuaded her mother not to sign the release. The Panel noted in this regard that there was no evidence of any serious intent to pursue any meaningful claims against Rossbach that would persuade a reasonable person to forego the $6,000.

The daughter thereafter complained of respondent's conduct to the New York State Attorney-General, who referred the matter to the Disciplinary Committee. She and Mrs. Hunter also ceased to cooperate in respondent's efforts to pursue the bar claim proceeding. In November 1996, after attempting to locate the purported holder of the old mortgage and being unable to do so, the title company authorized respondent to return the $1,500 to Mrs. Hunter. At the time of the hearing, respondent had not returned the $1,500, but indicated a willingness to return $1,200, the balance having been expended for costs associated with the preparation of the bar claim proceeding.

A Hearing Panel convened and, after hearing testimony and receiving evidence relating to the charges and possible sanctions, issued a report and recommendation, dated August 20, 1997, in which it found that respondent had violated DR 3-101 (A) by aiding a nonlawyer in the unauthorized practice of law; had violated DR 6-101 (A) (2) by handling a legal matter without preparation adequate in the circumstances; and, had violated DR 9-102 (C) (4) by failing to deliver promptly the file to his client as requested by her. The Panel dismissed the other

charges against respondent and recommended that respondent be suspended for three months.

Thereafter, on September 22, 1997, respondent requested that the Panel reconsider the recommended sanction in its report, which request was denied on October 30, 1997.

In sustaining Charge One, the Panel found that, by authorizing Butler, a resigned attorney, to negotiate, draft and finalize Mrs. Hunter's contract of sale and affidavit on October 22, 1994, and to appear on her behalf and negotiate and execute the forbearance agreement on October 24, 1994, respondent aided a nonlawyer in the unauthorized practice of law in violation of DR 3-101 (A). It noted the proliferation of the use of legal assistants in the last two decades and found generally that the appropriate use of legal assistants facilitates the delivery of legal services at reasonable cost in fulfillment of the obligation of lawyers to make legal counsel available to the public. Recognizing that there is no clear-cut definition of the unauthorized "practice of law" and the nature and scope of activities appropriately permissible to legal assistants, the Panel found, nevertheless, that "it is clear that delegation of tasks to legal assistants cannot substitute for the personal availability of the lawyer's experience and judgment to the client." While surmising that respondent may have been influenced by Butler's experience as a former lawyer and not doubting that respondent believed he was acting in good faith and appropriately, the Panel did not think that a reasonable lawyer under the circumstances would have been justified in the level of delegation which occurred, even if the ultimate advice would not have been different, and found that respondent "crossed the line between appropriate reliance on an assistant and abdication to a non-lawyer of the lawyer's responsibility to the client."

While rejecting the allegation, in Charge Three, that respondent had neglected a legal matter entrusted to him by failing to offer Mrs. Hunter the option of pursuing other viable legal defenses to the foreclosure and the allegation, in Charge Four, that his failure to start the bar claim action on the ancient mortgage constituted neglect, the Panel, nevertheless, found that the corollary to the finding that respondent culpably permitted Butler to "practice law" was a violation of DR 6-101 (A) (2), forbidding a lawyer from handling a legal matter without preparation adequate in the circumstances.

The Panel also sustained Charge Five, alleging a failure to promptly pay or deliver to his client properties in his posses-

sion, viz., the file and his fee for the now unnecessary bar claim proceeding, only to the extent of finding that respondent failed to promptly return the file. It recommended that respondent be ordered to turn over the file and the sum of $1,200 to Mrs. Hunter forthwith.

The Panel's report concluded: "In mitigation, Respondent introduced several judges and a State Senator from Bronx County who testified as to his general reputation in the Bronx County community. The Panel also believed that Parker acted in good faith throughout the representation of Hunter, although his conduct departed sufficiently from that to be expected from a reasonable practitioner as to be culpable. In aggravation, Respondent has had two prior admonitions for neglect, one in 1975 and one in 1990. Based on all of the facts and circumstances, and believing that a strong message needs to be sent as to the proper boundaries of delegation, yet recognizing Respondent's essential good faith, the Panel recommends suspension for three months. Petitioner urged suspension for six months and has cited to us various disciplinary proceedings in which lawyers engaged in a variety of blameworthy activities, including aiding another in the unauthorized practice of law, with the discipline imposed ranging from suspension for one year to disbarment. We have reviewed those cases and believe that Respondent's conduct is significantly less blameworthy than the conduct of the respondents therein."

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's findings of fact and conclusions of law, and imposing at least a three-month suspension as a sanction. In support of the motion, the Committee's counsel points out, as it did to the Panel, that, in similar cases where an attorney aided a nonlawyer in the unauthorized practice of law, other Departments have imposed sanctions ranging from a one-year suspension to disbarment (see, Matter of Raskin, 217 AD2d 187; Matter of Stenstrom, 194 AD2d 277; Matter of Kuriakose, 171 AD2d 358), but agrees with the Panel that respondent's misconduct was significantly less blameworthy than the conduct of the attorneys in the above-cited cases and, therefore, his suspension should be shorter.

In response, respondent requests that this Court be more lenient in imposing a sanction and impose an admonition or public censure. Respondent maintains that Mrs. Hunter was not damaged by Butler's acts and he places emphasis on the character evidence in the record and his pro bono activities.

Respondent also claims that a suspension will have a devastating impact on his legal career, particularly because his name would be removed from the approved closing attorney's list, which accounts for a substantial part of his income.

Mindful as we are of the effect upon respondent's career, the Panel's findings of fact and conclusions of law must be confirmed inasmuch as they are supported by the evidence. By allowing Butler, a resigned attorney, to prepare a contract of sale and appear on the seller's behalf in order to postpone a foreclosure sale, respondent certainly aided a nonlawyer in the unauthorized practice of law. Furthermore, although there was no proof that the seller was damaged, respondent's unauthorized delegation demonstrates that he himself did not adequately practice law in the circumstances, thereby violating DR 6-101 (A) (2).

With regard to sanction, the Panel's recommendation is confirmed as well. We are certainly loath to have attorneys improperly delegating their responsibilities as attorneys to nonlawyers and, depending on the circumstances of each case, severe penalties are warranted (*see, Matter of Stenstrom, supra*; *Matter of Kuriakose, supra*; *Matter of Raskin, supra*). Here, the Panel exercised restraint in recommending that respondent be suspended for only three months because he exercised poor judgment under the exigencies of the situation and Butler, who had been an experienced attorney, appears not to have damaged respondent's client as a result of his unauthorized practice of law. However, that respondent delegated so much of his responsibility to Butler demonstrates a serious lack of judgment that cannot be tolerated. Hence, despite respondent's arguments regarding his good character and the potential damage to his legal career, the short suspension recommended by the Hearing Panel is warranted.

Accordingly, the Committee's motion for an order confirming the Panel's findings of fact and conclusions of law and imposing a three-month suspension should be granted. Respondent is directed to turn over the file and to pay the sum of $1,200 to Mrs. Hunter forthwith.

MILONAS, J. P., RUBIN, WILLIAMS, MAZZARELLI and ANDRIAS, JJ., concur.

Application granted, the Hearing Panel's findings of fact and conclusions of law confirmed, and respondent suspended from the practice of law for a period of three months, effective April 27, 1998, and until the further order of this Court.