[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 271.]

COLUMBUS BAR ASSOCIATION *v*. CULBREATH.

[Cite as *Columbus Bar Assn. v. Culbreath*, 2000-Ohio-336.]

*Attorneys at law—Misconduct—Six-month suspension with entire six months stayed—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Aiding a nonlawyer in the practice of law—Concealing or knowingly failing to disclose that which is required by law to be revealed.*

(No. 99-1894—Submitted December 15, 1999—Decided March 22, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-11.

————————————

{¶ 1} In May 1989, Danny L. Bryant engaged respondent, Stanlee E. Culbreath of Columbus, Ohio, Attorney Registration No. 0033211, to represent him in a felony case in the Court of Common Pleas of Fayette County. Respondent appeared at the trial accompanied by Michael Samuels, who was neither a lawyer nor a Certified Legal Intern under Gov.Bar R. II. Samuels made opening statements to the jury and examined witnesses during the trial. In his closing argument, respondent referred to Samuels as "my partner," and represented that Samuels was an attorney. Bryant was convicted.

{¶ 2} On appeal, Bryant was represented by another attorney. Respondent did not tell the attorney handling the appeal that Samuels was not a lawyer. The court of appeals affirmed the conviction. After the trial, Samuels appeared before the civil service commission, representing Bryant at a hearing for which Bryant hired respondent to represent him.

{¶ 3} Subsequently, Samuels was investigated by the Unauthorized Practice of Law Committee ("UPL") of relator, the Columbus Bar Association, with respect

to allegations unconnected with the above matters. At the UPL hearing, respondent represented Samuels, who, with the advice of respondent, executed a "consent agreement" agreeing to refrain from any activities which might constitute the unauthorized practice of law. See *In re Application of Samuels* (1994), 70 Ohio St.3d 537, 639 N.E.2d 1151. As a part of that agreement in 1993, Samuels averred that he had given relator a full, accurate, and complete disclosure of his prior appearances and representations that may have constituted the practice of law. However, in the agreement, Samuels did not disclose either his representation of Bryant at the criminal trial or his appearance on Bryant's behalf before the civil service commission.

{¶ 4} When Bryant discovered in 1990 that Samuels was not an attorney, he moved to have his conviction set aside. The motion was granted. Bryant then demanded that respondent return the attorney fees he had paid. To date, respondent has returned $5,000 to Bryant, who contends that an additional $10,000 is owed to him.

{¶ 5} The matter was brought to the attention of relator in December 1996, and on February 17, 1998, relator filed a complaint charging that respondent's conduct violated several Disciplinary Rules. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"). The panel found the facts as stated and concluded that respondent's acts and failures to act violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting upon the attorney's fitness to practice law), 3-101(A) (aiding a nonlawyer in the practice of law), and 7-102(A)(3) (concealing or knowingly failing to disclose that which he is required by law to reveal). The panel found that a six-month suspension from the practice of law was warranted. However, because of the mitigation testimony presented by respondent that he is a well-thought-of community leader who has devoted significant amounts of time to

worthwhile legal and other causes, the panel recommended that the suspension be stayed for a period of probation during which term the respondent would cooperate with and be assisted by a mentor. The board adopted the findings and conclusions of the panel. The board also adopted the panel's recommendation and concluded that during the period of probation, respondent should cooperate with and be assisted by a "practice monitor."

———————————

*Terry K. Sherman* and *Bruce A. Campbell,* for relator.

*Larry H. James,* for respondent.

———————————

*Per Curiam.*

{¶ 6} We adopt the findings and conclusions of the board. Respondent is hereby suspended from the practice of law for six months with the entire six months stayed. During the six-month stayed suspension, respondent shall be on probation assisted in his practice by a mentor chosen by relator, with whom respondent shall cooperate. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

———————————

**COOK, J., dissenting.**

{¶ 7} I agree with the majority that suspension is the appropriate sanction in this case, but I respectfully dissent from the majority's decision to stay the entire suspension in favor of supervised probation.

**{¶ 8}** The majority's decision to suspend respondent finds support in the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards").[1] Respondent aided a nonlawyer in the practice of law in violation of DR 3-101(A). In doing so, respondent breached a duty that he owed to the legal profession and contravened a Disciplinary Rule that protects the public by restricting the practice of law to those who have met the necessary educational standards of the profession. The ABA Standards suggest that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2 (1992 Amend.).[2]

**{¶ 9}** Noting respondent's leadership in the community, the majority adopts the board's recommendation to stay the entirety of respondent's suspension in favor of a supervised probationary period. But the single mitigating factor cited by the majority is outweighed by the aggravating factors present in this record. Respondent stipulated that, as Samuels's attorney, he knowingly withheld information concerning the Bryant matter from the Unauthorized Practice of Law Committee. Respondent also conceded that he initially failed to respond to the grievance in this case. This court has previously suspended attorneys for violations of DR 3-101(A) when those violations were aggravated by other factors. See, *e.g.*, *Wayne Cty. Bar Assn. v. Naumoff* (1996), 74 Ohio St.3d 637, 660 N.E.2d 1177; *Cincinnati Bar Assn. v. Fehler-Schultz* (1992), 64 Ohio St.3d 452, 597 N.E.2d 79. See, also, *In re Parker* (1998), 241 A.D.2d 208, 670 N.Y.S.2d 414.

---

1. See ABA Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992).

2. The drafters of the ABA Standards describe DR 3-101 and other similar rules as "ethical standards that are not fundamental to the professional relationship" and conclude, accordingly, that "a sanction of disbarment or suspension will rarely be required." Nevertheless, the drafters expressly indicate that "there are situations when a more severe sanction should be imposed," and Standard 7.2 encompasses these situations. ABA Standards, Introduction to Standard 7.0.

**{¶ 10}** Because I believe that an actual suspension is appropriate in this case, I respectfully dissent.

_____