**YAN PING LU, Petitioner,**

v.

**Alberto R. GONZALES, Respondent.**

No. 05–5227–ag.

United States Court of Appeals,
Second Circuit.

Jan. 30, 2007.

Thomas V. Massucci, New York, New York, for Petitioner.

Russell Verby, Assistant United States Attorney (Susan Stidham Brandon, Assistant United States Attorney on the brief) for Sheldon J. Sperling, United States Attorney for the Eastern District of Oklahoma, Muskogee, Oklahoma, for Respondent.

PRESENT: Hon. AMALYA L. KEARSE, Hon. ROBERT A. KATZMANN, Circuit Judges, Hon. DAVID G. TRAGER, District Judge.*

### SUMMARY ORDER

Yan Ping Lu petitions for review of the September 2005 order of the BIA affirming the decision of Immigration Judge ("IJ") George T. Chew, denying her application for asylum, withholding of removal and relief under the Convention against

* The Honorable David Trager, United States District Judge for the Eastern District of New York, sitting by designation.

Torture ("CAT"). *In re Yan Ping Lu,* No. A 78 727 651 (B.I.A. Sept. 7, 2005), *aff'g* No. A 78 727 651 (Immig. Ct. N.Y. City May 14, 2004). Familiarity with the facts and the procedural history of the case is presumed.

Where, as here, the BIA affirms the IJ's decision without opinion, this Court reviews the IJ's decision directly as the final agency determination. *Ming Xia Chen v. B.I.A.,* 435 F.3d 141, 144 (2d Cir.2006). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. I.N.S.,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). Nevertheless, "the fact that the [agency] has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). An adverse credibility determination must be based on "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted).

The BIA has found that where an asylum claimant has submitted false documents in support of her claim in an asylum hearing, that act "indicates [her] lack of credibility" with respect to the factual assertion that was intended to be proven by the false document and "creates serious doubts regarding [her] overall credibility" in the absence of any explanation for the presentation of the documents. *In re O–D–,* 21 I. & N. Dec. 1079, 1081–83 (BIA 1998). Our sister circuits, citing *O–D–,* have agreed that the knowing submission of false documents in an immigration hearing can support an adverse credibility determination. *Selami v. Gonzales,* 423 F.3d 621, 625–26 (6th Cir.2005); *Yongo v. INS,* 355 F.3d 27, 33–34 (1st Cir.2004); *see also Yeimane–Berhe v. Ashcroft,* 393 F.3d 907, 911 (9th Cir.2004); *Kourski v. Ashcroft,* 355 F.3d 1038, 1038–39 (7th Cir.2004). Of course, an IJ's conclusion that a petitioner's documents were fraudulent must be based on more than speculation and conjecture. *Rui Ying Lin v. Gonzales,* 445 F.3d 127, 134 (2d Cir.2006).

Lu filed two asylum applications, both of which the IJ found to be "totally fabricated." Lu admits that the first asylum application and the documentation submitted therewith was fabricated, but argues (1) that because she voluntarily repudiated that application and then submitted a new application which she asserts to be true, the IJ erred in basing his adverse credibility determination, in part, on her original filing, and (2) that the IJ's finding with respect to her second account of persecution is not supported by specific and cogent reasons, as required by *Secaida–Rosales.* *See Secaida–Rosales,* 331 F.3d at 307.

In light of the BIA's reasoned conclusion that the knowing filing of a false asylum application casts a serious shadow on an applicant's overall credibility, we cannot agree that the IJ was required to overlook the falsity of Lu's original filing in assessing her credibility. Moreover, given the IJ's amply supported factual finding that Lu was complicit in the manufacture of the fraudulent documentation, we believe that the IJ acted well within the bounds of his discretion in holding Lu accountable for this fraudulent act even where, as here, the attorney that assisted Lu with that original filing since

has been disbarred, in part because of his misconduct before the immigration courts. *See In re Muto*, 291 A.D.2d 188, 739 N.Y.S.2d 67, 68–69 (1st Dep't 2002). In this regard, we also note that Lu's reliance on the false materials submitted with her original application did not end when she filed her second application. Rather, when asked at her asylum hearing what proof she could offer that she had a son, Lu responded that she had a household registration book that noted her son's birth—the very same registration book that she had elsewhere admitted was false.

■■■■ We also conclude that the IJ was entitled to discredit the assertions of fact made by Lu in connection with her second application for relief. First, we find no fault with the IJ's conclusion that a material aspect of Lu's testimony—that her father-in-law, who was anxious to hide the fact of her unlawful pregnancy because he was himself a family planning official, forced her to do hard labor in public from the third month of her pregnancy until she delivered, in a failed attempt induce a miscarriage—was inherently implausible: By forcing Lu to work in public late in her pregnancy, her father-in-law would have revealed precisely the information that he allegedly wanted to hide. In contrast, the IJ erred in finding it inherently implausible that Lu's father-in-law did not use his position in the family planning bureau to cause her to undergo a forcible abortion when she did not bow to his pressure to undergo a voluntary abortion. Nothing in the record reveals that Lu's father-in-law held a position that vested him with authority to force a woman to have an abortion, and even if he did, common sense does not compel the conclusion that he would have taken such a draconian measure with respect to a member of his own

family merely to protect his reputation. We also have concerns about the propriety of the IJ's decision to disregard a report produced by a duly licensed and eminently qualified psychologist and submitted to the IJ on the day of the hearing. The IJ appears to have disregarded that report, which he admitted into evidence over the government's objection, because it was "submitted at the last moment," and because he found, owing to its similarity to Lu's asylum application, that it was "highly unlikely that [the psychologist] even met with the respondent. It seems as if he just copied the asylum application statement and submitted it as part of the report." While the IJ possessed substantial discretion to decline to admit the report into evidence under these circumstances, and to decide what weight, if any, to give the report in assessing Lu's credibility, he clearly erred in dismissing the report merely because it recited many of the same facts as her asylum application; indeed, it would have been suspicious if Lu had presented a different account to her psychologist. Similarly, neither these similarities nor the recent provenance of the report, standing alone, provided the IJ with sufficient grounds to impugn the credibility of the psychologist, who, in addition to being highly qualified in that field of practice, is admitted to the New York State Bar and the Bar of the United States Supreme Court and therefore cannot lightly be presumed to have lied when he submitted his report for the IJ's consideration under penalty of perjury.

These errors are not insubstantial, and in other circumstances might compel us to remand the case. However, in view of the shadow cast on Lu's credibility by the submission of the original fraudulent application, by her continued reliance on a fraudulent document even after she had

conceded its falsity, and by the properly noted implausibility in a core aspect of Lu's testimony, we can "confidently predict that the IJ would reach the same decision absent the errors that were made." *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 162 (2d Cir.2006) (internal quotation marks omitted). We therefore decline to disturb the IJ's decision to deny asylum to Lu.

■ Because the only evidence of a threat to Lu's life or freedom depended upon her credibility, the adverse credibility finding in this case necessarily precludes success on the claim for withholding of removal. *See Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003). Additionally, because Lu has not raised any argument in her brief with respect to the IJ's decision to deny her relief under the CAT, any claim that she may have regarding that denial is deemed waived. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n. 1 (2d Cir.2005).

For the foregoing reasons, the petition for review is **DENIED.** Our review having been completed, the pending motion for a stay of removal in this petition is **DENIED** as moot.