COLUMBUS BAR ASSOCIATION *v*. CULBREATH.

[Cite as *Columbus Bar Assn. v. Culbreath,*

134 Ohio St.3d 24, 2012-Ohio-5031.]

*Attorneys—Misconduct—Multiple trust-account violations—False statements— Failure to cooperate—Indefinite suspension.*

(No. 2012-0999—Submitted September 11, 2012—Decided November 1, 2012.)

On CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-060.

_____

LUNDBERG STRATTON, J.

{¶ 1} Respondent, Stanlee E. Culbreath of Columbus, Ohio, Attorney Registration No. 0033211, was admitted to the practice of law in Ohio in 1975. On March 22, 2000, we suspended him from the practice of law for six months, with the entire six months stayed, for assisting a nonlawyer in the unauthorized practice of law and failing to disclose the assistance. *Columbus Bar Assn. v. Culbreath*, 88 Ohio St.3d 271, 725 N.E.2d 629 (2000).

{¶ 2} On August 16, 2010, relator, Columbus Bar Association ("CBA"), filed a complaint charging Culbreath with three counts of misconduct involving violations of the Ohio Rules of Professional Conduct. The CBA amended its complaint on October 1, 2010. The amended complaint alleged that Culbreath had neglected to properly document a settlement and distribute the funds, failed to properly maintain his client trust account, and failed to fully cooperate in the disciplinary process by not making himself available for a deposition and by not producing various requested documents in a timely manner.

{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline heard the cause on May 9, 2011, and on January 30, 2012. Based upon

the record, including exhibits and stipulations, the panel concluded that there was clear and convincing evidence that Culbreath had violated Prof.Cond.R. 1.15 (requiring a lawyer to keep funds of clients in a separate interest-bearing account, to keep records of the account, and to perform a monthly reconciliation), 4.1 (prohibiting a lawyer from making a false statement of law or fact to a nonclient), 5.3 (requiring a lawyer to make reasonable efforts to ensure that the conduct of his or her nonlawyer employees is compatible with the lawyer's professional obligations), 8.1 (prohibiting a lawyer from failing to respond to inquiries in a disciplinary investigation), and 8.4(d) and (h) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice and conduct that adversely reflects on the lawyer's fitness to practice law). The panel considered factors in mitigation and aggravation and recommended that Culbreath be permanently disbarred.

{¶ 4} The Board of Commissioners on Grievances and Discipline agreed with the panel's findings, conclusions, and recommended sanction.

{¶ 5} Culbreath filed objections to the recommended sanction of permanent disbarment on the basis that the board erroneously concluded that he had failed to cooperate in the disciplinary process in violation of Prof.Cond.R. 8.1 and that the board failed to consider in mitigation his medical diagnosis presented by Judith Fisher.

{¶ 6} For the reasons stated below, we sustain Culbreath's objection to the recommended sanction. We find that the more appropriate sanction is an indefinite suspension from the practice of law in Ohio, with conditions on reinstatement.

Findings of Panel and Board

Count One

{¶ 7} In 2007, Culbreath assumed responsibility for a personal-injury claim belonging to Kossar Hassan after Hassan's attorney, Paul Brown, who was

also Culbreath's law partner, unexpectedly died. On March 10, 2008, Culbreath settled the claim for $5,000. Although at the time of the settlement, Culbreath knew that Hassan had outstanding medical expenses arising from her injuries, he did not pay the medical-service providers in a timely manner.

{¶ 8} Gisela Salinas, a representative from Health 1 Medical, an independent firm that performed billing services for Hassan's medical-service provider, testified before the panel that in June or July 2009, she contacted Hassan about payment. Salinas testified that Hassan told her that the case had been settled in March 2008 and that Hassan had received a check for only $700 out of the $5,000 settlement.

{¶ 9} Salinas further testified that she left multiple telephone messages for Culbreath. He eventually returned her calls after she threatened to file a complaint against him for nonpayment of the medical bill. She testified that Culbreath insisted that she could not have spoken with Hassan, because Hassan was out of the country, and that he told her that the case had been settled for only $1,800. She asked Culbreath for a disbursement sheet and payment. He sent the payment but did not include the disbursement sheet. Salinas testified that in a later conversation, Culbreath told her he could not locate the file or provide a copy of the disbursement sheet.

{¶ 10} In his deposition, Culbreath testified that he was not certain whether he had had any conversation with Salinas about Hassan's medical bills. He later testified at the hearing that the conversation with Salinas was based on a misunderstanding. He thought she was asking about another personal-injury case that had settled for $1,800 around the same time as Hassan's case.

{¶ 11} Culbreath testified that he had forgotten to contact the medical providers following the settlement to negotiate payment of their fees. He eventually sent a partial payment from his trust account on July 18, 2009, more than a year after the settlement. Culbreath blamed the mistake on staffing

changes at his office and a new secretary who had mistakenly made the partial payment. Culbreath sent a second check to correct the error, but he was unable to produce a signed disbursement sheet as evidence of the Hassan settlement.

Count Two

{¶ 12} Culbreath admitted that he had commingled his funds and his clients' funds in his trust account, used his trust account to pay personal and business expenses, and made unauthorized withdrawals from the account. He also stipulated that he had failed to maintain ledgers for the trust account.

{¶ 13} In his deposition, Culbreath admitted that from 2007 through 2009, he was unaware of the trust-account requirements that had become effective on February 1, 2007. He testified that his trust account became overdrawn on three occasions. He further admitted that he had credit issues and a number of judgments against him, including a judgment in foreclosure.

Count Three

{¶ 14} On October 9, 2009, the CBA served a request for the production of documents and a notice of deposition on Culbreath for November 30, 2009. The parties stipulated that there was some delay in scheduling but that Culbreath finally appeared for his deposition on April 9, 2010. Culbreath acknowledged that he did not immediately locate and produce all of the documents requested and that he did not have in his possession many of the documents requested. For instance, Culbreath produced only some bank statements from his trust account. He was unable to produce any deposit or withdrawal slips for the years 2008 and 2009, and only very few check stubs. Culbreath also failed to timely produce requested federal tax returns.

Violations of the Rules of Professional Conduct

{¶ 15} We agree with the panel's conclusions, as adopted by the board, that there was clear and convincing evidence that Culbreath had violated Prof.Cond.R. 1.15, 4.1, 5.3, 8.1, and 8.4.

4

Sanction

**{¶ 16}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the duties violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 17}** In mitigation, Culbreath offered that he has had only one prior instance of discipline since becoming licensed to practice law in 1975. He submitted testimony or letters from three character references. A representative of the Ohio Lawyers Assistance Program ("OLAP") testified that Culbreath had signed a monitoring contract in January 2010 and that he was doing "moderately well" in compliance.

**{¶ 18}** Judith Fisher, a clinical social worker with whom Culbreath began counseling after the May 9, 2011 hearing, also testified in mitigation. According to Fisher, she diagnosed Culbreath with an adjustment disorder with depression and anxiety. Culbreath had disclosed that numerous personal problems had occurred within a short period of time, including the death of his brother, who had managed the law firm's finances, the death of his daughter's fiancé a month later, and the unexpected death of his law partner and friend, Paul Brown. In addition, Culbreath told her that his sister, who worked as his legal secretary, had taken time off following her husband's death, that his son was incarcerated, and that his wife suffered from a substance-abuse problem.

**{¶ 19}** Fisher opined that these events had caused Culbreath's emotional symptoms, which in turn affected his ability to practice law. She testified that in her opinion, Culbreath could return to the practice of law under certain circumstances, such as the continuation of counseling and his relationship with

OLAP, plus the appointment of a monitor for his law practice. BCGD Proc.Reg. 10(B)(2)(e) and (g).

{¶ 20} The panel identified the presence of several aggravating factors, including Culbreath's prior disciplinary record, his repeated refusal to acknowledge the wrongfulness of his conduct, including the circumstances of his prior disciplinary case, his lack of cooperation, his repeated abuse of his trust account, and his poor recordkeeping and mishandling of client files that constituted a pattern of misconduct resulting in multiple offenses. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), and (g).

{¶ 21} Culbreath argued that a six-month suspension of his law license, with all six months stayed, was an appropriate sanction. The CBA requested a sanction of indefinite suspension. But the panel recommended, and the board agreed, that Culbreath should be permanently disbarred, citing his "prior disciplinary history, the gravity of his misconduct, and his uncooperative, evasive manner and continuing irrational thought processes."

{¶ 22} The board cited *Dayton Bar Assn. v. Wilson*, 127 Ohio St.3d 10, 2010-Ohio-4937, 935 N.E.2d 841, in which we imposed an indefinite suspension upon an attorney who failed to maintain accurate records of the funds in her trust account, failed to participate in the disciplinary process, and refused to acknowledge her wrongful conduct. The board also cited *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, in which we imposed an indefinite suspension upon an attorney who misused his trust account, failed to provide records for his account during the disciplinary process, and provided less than candid responses to inquiries regarding the records.

{¶ 23} Finally, we imposed an indefinite suspension in *Disciplinary Counsel v. Ranke*, 130 Ohio St.3d 139, 2011-Ohio-4730, 956 N.E.2d 288, for misconduct that included failure to properly maintain a trust account and failure to cooperate in the disciplinary investigation.

6

**{¶ 24}** After reviewing the board's analysis of the evidence and the case law in support of its recommendation, we believe that an indefinite suspension, with stringent conditions on reinstatement, is appropriate under these circumstances. Many of Culbreath's problems stem from the numerous tragic events that disrupted his personal and professional life beginning in 2007. His counselor, Judith Fisher, testified that as a result of his grief, he was unable to focus on his law practice, which in turn affected his ability to practice law.

**{¶ 25}** Prior to any reinstatement, Culbreath must demonstrate that he has taken 12 hours of instruction on current professional-responsibility rules and acceptable office practices in addition to the general requirements in Gov.Bar R. X(3)(G). In addition, he must submit an independent mental-health evaluation, successfully complete his OLAP contract, and commit no further misconduct. Upon reinstatement, he must be assigned a monitor for one year of probation, during which he must practice law in association with at least one other experienced lawyer. Under these circumstances, an indefinite suspension of Culbreath's license to practice law fulfills the underlying purpose of the disciplinary proceedings, i.e., "to safeguard the courts and to protect the public." *Ohio State Bar Assn. v. Weaver,* 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975).

**{¶ 26}** Accordingly, we indefinitely suspend Stanlee E. Culbreath from the practice of law in Ohio, with conditions on reinstatement as stated. Costs are taxed to Culbreath.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

––––––––––––––––––

Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel; Terry K. Sherman; and Tyack, Blackmore & Liston Co., L.P.A. and James P. Tyack, for relator.

Kenneth R. Donchatz, for respondent.

_____