OPINION OF THE COURT
Per Curiam.
Respondent Jonathan N. Thalasinos was admitted to the practice of law in the State of New York by the Second Judicial Department on February 25, 1987. At all times relevant to this proceeding, respondent maintained a registered address within the First Department.
In 2012, the Departmental Disciplinary Committee (DDC) brought four charges against respondent: aiding a suspended attorney in the unauthorized practice of law in violation of the Code of Professional Responsibility DR 3-101 (a) (22 NYCRR 1200.16 [a]) and rule 5.5 (b) of the Rules of Professional Conduct (22 NYCRR 1200.0); making an intentional misrepresentation to the Committee in violation of rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and (d) (conduct prejudicial to the administration of justice) (22 NYCRR 1200.0); and, based on the aforementioned misconduct, engaging in conduct that adversely reflects on his fitness as a lawyer in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and rule 8.4 (h).*
By way of background, respondent graduated law school in 1978 and has been a non-practicing attorney for most of his career. An unrelated incident in 1998 led to a forced but honorable discharge from the Army. That incident also resulted in an admonition in 1999. From 2007 through 2010, while employed at the Environmental Protection Agency (EPA), respondent performed per diem work, in immigration law, for a suspended attorney (SA). The present charges stem from respondent’s association with SA. Although respondent was aware of the *157 suspension from 2007, he claimed that he did not see the actual Appellate Division decision until he was deposed by the DDC in January 2012.
Respondent’s relationship with SA developed as a result of his employment of SA’s wife as a nanny for his young daughter. Respondent explained that he and his then wife (who suffered from a serious chronic illness) were both employed full time and that SA’s wife provided reliable childcare. Respondent became aware that SA and his wife were experiencing financial difficulty and respondent felt that by assisting SA in immigration matters he could help alleviate the couples’ financial strain. This would, in turn, maintain stability in his own family by SA’s wife continuing as his nanny. In addition, respondent was anticipating retiring from federal service in the near future and thought that by working for SA he could learn immigration law (an area in which he had no experience) and then develop his own immigration practice.
Respondent did not initially believe that assisting SA in immigration matters constituted aiding the unauthorized practice of law, and only became aware of this after he became the subject of a DDC investigation. SA was ineligible to practice before the United States Citizenship and Immigration Service (USCIS) and the Immigration Court because he was required to be an attorney in good standing “of the bar of the highest court of any State . . . and is not under any order suspending ... or otherwise restricting him in the practice of law” (8 CFR 1001.1 [fl; 1292.1 [a] [1]).
Respondent assisted SA’s office in Astoria, Queens. The office and all client files belonged to SA. Respondent was paid $400-$500 per day for immigration-related appearances. Respondent would meet with SA the day prior to (or, in some cases, the day of) a'proceeding and SA would instruct him as to what he must do at the proceeding. Respondent would not meet with the client until the actual day of the proceeding. Due to his lack of experience in immigration law, respondent allowed SA to make all legal (and nonlegal) decisions with respect to the cases. In addition, all letters and documents were prepared by SA. Respondent never executed retainer agreements with the clients, nor did he ever receive any payments from the clients. Respondent estimated that he appeared at 10-12 immigration hearings (before the USCIS) for SA during the three years.
The investigation which led to the charges against respondent was initiated following two complaints: a 2004 complaint based *158 on the manner in which an employment petition was handled, and a 2009 complaint about the manner in which a visa renewal application was handled. Respondent never met with these clients nor spoke with them. Rather, they retained SA who then used respondent’s name on the paperwork. Respondent signed an answer to the 2009 complaint, which was prepared by SA, and which contained the following misrepresentation: “[a]ny question that would arise or could be asked concerning legal matter, was evaluated by me.” Respondent knew that the statement was false at the time he signed his answer. However, by a subsequent stipulation, respondent admitted the material facts and all charges. He ceased working for SA in 2010 and is currently unemployed. On November 20, 2012, a hearing was held before a referee and the charges were sustained. The matter then proceeded to the sanction phase.
In his mitigation testimony, respondent testified that while working for the EPA, he responded and assisted as a rescue worker on 9/11 and then spent approximately six weeks searching through debris at a Staten Island collection site. In addition, respondent expressed remorse for his misconduct.
The DDC argued, in their post-hearing memoranda, for a four-year suspension and respondent urged a private reprimand. By report dated February 12, 2013, the Referee reiterated his earlier liability findings sustaining all charges and recommended that respondent be suspended from the practice of law for three years.
On March 28, 2013, a Hearing Panel heard oral argument. The DDC again argued for a four-year suspension but acknowledged that the three-year suspension recommended by the Referee was within the range of applicable precedent. Respondent urged a suspension of no more than one year. In a later submission, respondent acknowledged that a 1 to 2-year suspension was the appropriate starting point for considering sanction in this matter, but argued that, based on the mitigating factors, he fell within the lower end of the one-year suspension to censure scale.
On or about May 1, 2013, the Panel issued its report in which it confirmed the Referee’s liability findings but modified his sanction recommendation and, instead of a three-year suspension, recommended that respondent be suspended for 21/2 years. In support of a 2V2-year suspension, the Panel stated that
“[t]he sanctions for aiding a suspended attorney in *159 the unauthorized practice of law range from public censure to disbarment depending on the mitigating and aggravating factors and additional charges. More common is a period of suspension. Under the case law, the period of suspension ranges from three months, to a year, depending [on] the mitigating and aggravating factors. The Panel has found no cases in which a respondent who was charged with aiding a suspended attorney was also charged with violating Rule 8.4 (c) as Respondent was here. However, cases involving lying to the Committee have also resulted in suspensions.
“In weighing the aggravating factors, in particular the false statements to the Committee and the multitude and vulnerability of his clients — at least two of whom appear to have been neglected— against the mitigating factors, in particular his years of public service, the Panel believes that the appropriate sanction is a suspension of two and a half years, and so modifies the recommendation of the Referee accordingly. However, lest there be any misunderstanding, the Panel wishes to emphasize its general view that, absent significant mitigating factors, anyone who lies to the Committee in answering a complaint is risking a sanction up to and including disbarment” (citations omitted).
The Panel noted in mitigation that respondent did not make a substantial amount of money from working with SA (approximately $6,000 over three years) and, in that sense, did not display any venal motive. However, respondent did seek to benefit personally from his actions in that he hoped to learn immigration law under SA’s tutelage. In terms of aggravation, the Panel noted, inter alla, that respondent did not admit to making a false statement in his answer to the complaint until pressed to do so by DDC staff counsel during his deposition.
By notice of petition dated August 8, 2013, the DDC sought an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (1), confirming the Hearing Panel’s findings of fact and conclusions law.
By cross motion dated September 19, 2013, respondent requested an order confirming the Hearing Panel’s findings of fact and conclusions of law, but disaffirming the Panel’s report *160 with respect to the consideration of neglect in its recommendation of a 2V2-year suspension from the practice of law. By removing neglect as an aggravating factor, respondent suggested the Court should reduce the proposed suspension to a period of between 1 to IV2 years, based upon the mitigation. Respondent argued, inter alla, that the Panel essentially premised its 2V2-year suspension recommendation on a finding that he neglected the matters of the two clients who complained to the DDC. However, respondent was never charged with neglect, he never addressed neglect in his defense, and, furthermore, he entered into a prehearing stipulation in which it was agreed that “[tjhere is no charge of neglect in the Statement of Charges.” Accordingly, respondent argues that finding him guilty of neglect when he had no notice of such charge violates his right to procedural due process under In Re Ruffalo (390 US 544 [1968]).
In reply, the DDC argued that the Panel did not actually find respondent liable for neglecting the two immigration matters at issue but merely commented that the matters “were neglected” in reference to SA who was the neglecting party and thus “[n] either client actually dealt with respondent.”
Respondent also argues that the DDC’s initial urging of a four-year suspension and the Referee’s recommendation of a three-year suspension “artificially raised the bar on the discussion of sanctions far above what is found in the two most relevant cases, Matter of Rodkin (21 AD3d 111 [1st Dept 2005]), and Matter of Lefkowitz (47 AD3d 326 [1st Dept 2007]).” The aforementioned matters involved six-month and three-month suspensions, respectively, for aiding the unauthorized practice of immigration law.
Since respondent admitted liability to all four charges, the DDC’s petition and respondent’s cross motion are granted to the extent that they request confirmation of the Hearing Panel’s findings of fact and conclusions of law sustaining the charges.
What sanction to impose presents a more difficult question. As noted by both the Hearing Panel and the DDC, the applicable precedent involves sanctions ranging from public censure to disbarment (see Matter of Lefkowitz, 47 AD3d at 329-330 [three-month suspension for, inter alla, aiding nonlawyer agencies in the unauthorized practice of immigration law]; Matter of Rodkin, 21 AD3d at 112-113 [six-month suspension for, inter alla, aiding nonlawyer agencies in the unauthorized practice of immigration law, neglect, prior admonition for same misconduct, while showing remorse and extensive pro bona service]; Matter *161 of Meltzer, 293 AD2d 202 [1st Dept 2002] [public censure for, inter alla, aiding a nonlawyer in the unauthorized practice of immigration law, substantial evidence in mitigation, including personal, financial, and psychological problems]; Matter of Muto, 291 AD2d 188 [1st Dept 2002] [disbarred for 43 disciplinary violations involving, inter alla, aiding nonlawyer agencies in the unauthorized practice of immigration law, aggravating factors included prior disciplinary history, misrepresentation to DDC, and lack of remorse]; Matter of Parker, 241 AD2d 208 [1st Dept 1998] [three-month suspension for, inter alla, aiding the unauthorized practice of law by allowing a resigned attorney to prepare a contract of sale and appear on behalf of a seller to postpone a foreclosure sale]; Matter of Takvorian, 240 AD2d 95 [2d Dept 1998] [one-year suspension for, inter alla, forming a partnership with and aiding a nonlawyer in the unauthorized practice of law]; Matter of Raskin, 217 AD2d 187 [2d Dept 1995] [one-year suspension for, inter alla, aiding a disbarred attorney in the unauthorized practice of law]).
Sanction determination in cases where attorneys have aided the unauthorized practice of law is very fact dependent. Here, respondent’s misconduct is not as extensive as those matters in which disbarment was imposed, however, the surrounding circumstances make his case distinguishable from those in which a brief suspension of 3 to 6 months was imposed. Specifically, respondent was aware from the outset that SA was a suspended attorney. Notwithstanding this knowledge, he never bothered to review this Court’s decision suspending SA; there is no evidence that he consulted with ethics counsel or performed any legal research of his own regarding the ethical issues raised by his arrangement with SA; nor is there any indication that he reviewed the federal regulations pertaining to the eligibility to practice immigration law.
Respondent’s conduct was reckless and irresponsible and warrants suspension. Furthermore, respondent’s intentional misrepresentation to the DDC in his answer to the complaint is a significant aggravating factor which only adds to the case for suspension (see Matter of Nuzzo, 47 AD3d 125, 128 [1st Dept 2007] [one-year suspension for, inter alla, neglect and false statements to DDC as aggravating factor]). Respondent’s prior admonition should also be considered in aggravation. The record also indicated substantial mitigating factors, including respondent’s remorse, the fact that his conduct was not motivated by greed, the absence of any proof that clients were neglected, and *162 a record of substantial public service. We find that a one-year suspension adequately addresses the seriousness of respondent’s misconduct, including his initial dishonesty towards the DDC, and takes into account the evidence in mitigation, and the case law involving aiding in the unauthorized practice of law.
Accordingly, the Committee’s petition is granted to the extent of confirming the Hearing Panel’s findings of fact and conclusions of law, and respondent is suspended from the practice of law for one year. Respondent’s cross motion is granted to the extent that it seeks confirmation of the Hearing Panel’s findings of fact and conclusions of law, and otherwise denied.
Gonzalez, PJ., Tom, Saxe, Manzanet-Daniels and Gische, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of one year, effective 30 days from the date hereof. Cross motion granted to the extent indicated, and otherwise denied.

 Respondent’s misconduct occurred between 2007 and 2010, therefore, he was charged under both the former Disciplinary Rules and the current Rules of Professional Conduct.