06-5554-ag
Wang v. BIA

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: November 5, 2007)                              Decided: November 29, 2007)

Docket No. 06-5554-ag

JIAN HUA WANG, AKA JEN HUA WANG, AKA
BAO ZHU BAI,

        *Petitioner*,

        v.

BOARD OF IMMIGRATION APPEALS,

        *Respondent*.

Before: CABRANES, KATZMANN, and HALL, *Circuit Judges*.

Petitioner seeks review of an order of the Board of Immigration Appeals ("BIA") denying his motion to reopen removal proceedings as untimely. We conclude that the BIA did not err in determining that petitioner had not exercised due diligence in pursuing the reopening of his case based on a claim of ineffective assistance of counsel.

Petition for review denied.

                GARY J. YERMAN, New York, New York, *for Petitioner.*

                HILLEL R. SMITH, Trial Attorney, (Peter D. Keisler, Assistant Attorney General; Terri J. Scadron, Assistant Director, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent.*

PER CURIAM:

The question presented, which is the principal focus of this opinion, is whether petitioner exercised due diligence in filing his motion to reopen based on a claim of ineffective assistance of counsel. Petitioner Jian Hua Wang, a native and citizen of the People's Republic of China, arrived in

the United States in October 2000 without valid entry documents. He was placed in so-called "removal proceedings," where he was represented by counsel, Joseph Muto, and applied for asylum,[1] withholding of removal pursuant to 8 U.S.C. § 1231(b)(3),[2] and relief under the United Nations Convention Against Torture ("CAT").[3] His asylum application, prepared by Muto, claimed a fear of persecution in China because of its coercive population control policies. Wang asserted that his wife was forced to abort her second pregnancy by family planning officials. He further claimed that he would be imprisoned or sterilized for opposing the coercive population control policies if he were returned to China based on his intent to "imminently violate the policy . . . as [Wang and his wife] plan to have more" than one child. In August 2001, Wang testified before Immigration Judge Barbara A. Nelson ("IJ") in support of his applications for relief. At the conclusion of the hearing, the IJ denied Wang's claims for asylum and withholding of removal, finding Wang's testimony "not credible or reliable because of the serious and numerous omissions from his written application for asylum without satisfactory explanation." Wang timely filed an appeal to the BIA, which affirmed the IJ's decision without opinion in August 2002. Wang did not file a petition for review of that decision.

In June 2006, nearly four years after the BIA decision, Wang, now represented by new counsel,

---

[1] Eligibility for asylum is governed by 8 U.S.C. § 1158(b)(1)(A), which states in pertinent part:

> The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

[2] This provision states in relevant part:

> [T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A).

[3] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, S. Treaty Doc. No. 100-20 (1988); *see also* 8 C.F.R. § 1208.16(c) (implementing the CAT).

filed a motion to reopen his case. He argued, *inter alia*, that the 90-day time limitation for filing motions to reopen[4] did not apply to his case because "[t]ime limitations for motions to reopen are equitably tolled and thus do not apply where ineffective assistance of counsel constitutes 'exceptional circumstances.'" Wang alleged that he received ineffective assistance of counsel from his former attorney, Muto, in pursuing his appeal before the BIA. He argues that Muto was ineffective by (1) failing to "obtain an oral statement" from Wang for the purposes of preparing the asylum application; (2) incorrectly stating a number of facts in that application and the accompanying affidavit; (3) failing to challenge the IJ's findings and failing to correct certain facts in the brief submitted in Wang's behalf to the BIA; and (4) failing to notify Wang that the BIA had dismissed his appeal. To establish that he had exercised due diligence in pursuing this claim, pursuant to the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *petition for review denied by*, 857 F.2d 10 (1st Cir. 1988), Wang submitted a disciplinary complaint he filed against Muto on January 18, 2006 with the Departmental Disciplinary Committee, First Judicial Department, in New York; his affidavit in support of his complaint against Muto; a letter served upon Muto providing notice of the complaint; the official response of the Departmental Disciplinary Committee to Wang's complaint, informing Wang of Muto's disbarment; and a copy of the March 19, 2002 decision of the Supreme Court of New York, Appellate Division, First Department, disbarring Muto.[5] He also submitted a letter, dated October 29, 2005, documenting his September 29, 2005 request for the record of proceedings in his case pursuant to the Freedom of

---

[4] 8 C.F.R. § 1003.2(c)(2) provides in relevant part:

> Except as provided in paragraph (c)(3) of this section, an alien may file only one motion to reopen [removal] proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.

[5] The Appellate Division of the New York Supreme Court determined that Muto had engaged in numerous acts of professional misconduct with respect to at least seventeen clients who he had represented in immigration proceedings, and had also engaged in financial misconduct with respect to the trust accounts he maintained on his clients' behalf. *In re Muto*, 291 A.D.2d 188 (N.Y. App. Div., 1st Dep't 2002). There is no indication whether Wang was among the seventeen clients mentioned.

Information Act ("FOIA").

In his June 2006 submissions to the BIA, Wang also argued that circumstances in China had significantly worsened, and this change in circumstances was a separate basis for an exception to the time limitation for filing a motion to reopen. *See* 8 C.F.R. § 1003.23(b)(4)(i).[6] He also urged the BIA to reopen his case *sua sponte*, in the interest of justice. Among the documents he submitted to establish changed circumstances were: (1) a letter from his wife alleging increased enforcement of the family planning law in her hometown in China; (2) a copy of the September 23, 2002 testimony of Dr. John S. Aird, a retired U.S. Census Bureau demographer and immigration expert, discussing China's new Family Planning Law;[7] (3) a Consular Information Sheet for China, dated May 29, 2003; (4) an excerpt from the 2004 U.S. Department of State Country Report on Human Rights Practices for China ("Country Report"); and (5) an excerpt from the 2005 Country Report.

In November 2006, the BIA issued a short opinion denying Wang's motion to reopen, finding that he failed to show that he acted with due diligence in pursuing the reopening of his case based on a claim of ineffective assistance of counsel. In doing so, the BIA assumed that the petitioner did not learn of the BIA's August 2002 decision dismissing his appeal until October 29, 2005, when he received

---

[6] That provision provides in relevant part:

> The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply if the basis of the motion is to apply for asylum under section 208 of the Act or withholding of removal under section 241(b)(3) of the Act or withholding of removal under the Convention Against Torture, and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding.

8 C.F.R. §§ 1003.23(b)(4)(i).

[7] Dr. Aird testified before the Congressional-Executive Commission on China, a body comprised of members of Congress and the Executive branch that was created by Congress in 2000 to monitor human rights and the development of the rule of law in China. Our court has had occasion to consider Dr. Aird's testimony and affidavit several times, most extensively in *Jin Xiu Chen v. U.S. Dep't of Justice*, 468 F.3d 109, 110 (2d Cir. 2006). We express no view here on the appropriateness *vel non* of simply introducing into the record of a proceeding copies of a statement of this sort, originally filed in an altogether different proceeding.

his file through a FOIA request from his new counsel but noted that the motion to reopen was not filed until eight months after that date.[8] The BIA also found that Wang's documentary submissions failed to establish "a material change in circumstances arising in China for purposes of meeting the 8 C.F.R. § 1003.2(c)(3)(ii) exception." Additionally, the BIA found that Wang did not present exceptional circumstances to warrant *sua sponte* reopening of his case.[9]

Wang timely filed before this Court a petition for review of the BIA's denial of his motion to reopen. He argues that the BIA abused its discretion in denying his motion to reopen because he demonstrated changed country conditions in China that warranted an exception to the 90-day filing deadline for motions to reopen. He further argues that he "suffered ineffective assistance of counsel, and that such circumstances warrant equitable tolling of the time limitations on motions to reopen." In response, the Government argues that the BIA did not abuse its discretion in denying Wang's motion to reopen because it properly determined that Wang failed to show: (1) that he exercised due diligence during the relevant period of time; and (2) that country conditions in China had changed so as to warrant an exception to the ninety-day time limit for filing motions to reopen.

## DISCUSSION

We review the BIA's denial of a motion to reopen for abuse of discretion. *See, e.g.*, *Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir. 2005). An abuse of discretion may be found where the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Kaur*, 413 F.3d at 233-34 (quoting *Ke Zhen Zhao v. U.S. Dep't of*

---

[8] The BIA did not consider, and thus left open, the question of whether counsel's ineffectiveness actually prejudiced the petitioner. Under *Matter of Lozada*, "[i]neffective assistance of counsel in deportation proceedings is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. One must show, moreover, that he was prejudiced by his representative's performance." 19 I&N Dec. at 638 (internal citations omitted).

[9] On appeal, Wang does not challenge the BIA's refusal to reopen his removal proceedings *sua sponte*.

5

*Justice*, 265 F.3d 83, 93 (2d Cir. 2001)).

Pursuant to 8 C.F.R. § 1003.2(c)(2), a motion to reopen must be filed within 90 days of the entry of the final decision in the underlying proceeding. *See* note 4, *ante* at 3 (text of provision). Claims of ineffective assistance of counsel may provide a sufficient basis for equitable tolling of the 90-day period if the movant shows that his due process rights were violated by the conduct of counsel, and that the movant "exercised due diligence in pursuing the case during the period [he] seeks to toll." *Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006) (citation omitted); *Cekic v. INS*, 435 F.3d 167, 170 (2d Cir. 2006) (noting that "no matter how egregiously ineffective counsel's assistance may have been, an alien will not be entitled to equitable tolling unless he can affirmatively demonstrate that he exercised reasonable due diligence during the time period sought to be tolled"). Here, there is no dispute that Wang's June 2006 motion was untimely because the BIA issued its decision affirming the IJ's order of removal in August 2002, nor is there dispute that Wang received a copy of his BIA files no later than October 29, 2005.

We have previously held that a petitioner who waits two years or longer to take steps to reopen a proceeding has failed to demonstrate due diligence. *See e.g.*, *Zhao Quan Chen v. Gonzales*, 492 F.3d 153, 155 (2d Cir. 2007) (over three years); *Cekic*, 435 F.3d at 171–72 (two years); *Iavorski v. INS*, 232 F.3d 124, 129–35 (2d Cir. 2000) (same); *Ali*, 448 F.3d at 516 n.2 (eleven years); *but see Jin Bo Zhao v. INS*, 452 F.3d 154, 159 (2d Cir. 2006) ("We conclude that the five-month period . . . is not too long for Zhao to merit equitable tolling."). Other circuits have found that petitioners waiting shorter time periods have failed the due diligence requirement for reopening. *See, e.g.*, *Scorteanu v. INS*, 339 F.3d 407, 414 (6th Cir. 2003) (approximately eleven months); *Jobe v. INS*, 238 F.3d 96, 97 (1st Cir. 2001) (eight months).

We write to clarify that there is no magic period of time—no *per se* rule— for equitable tolling premised on ineffective assistance of counsel. Rather, the nature of the analysis in each case is a two-step inquiry that first evaluates reasonableness under the circumstances—namely, whether and when

6

the ineffective assistance "[was], or should have been, discovered by a reasonable person in the situation." *Iavorski*, 232 F.3d at 134. Then, petitioner bears the burden of proving that he has exercised due diligence in the period between discovering the ineffectiveness of his representation and filing the motion to reopen. *Id.* at 135. Both steps of the inquiry are tailored to the specific facts of the case. Accordingly, there is no period of time which we can say is *per se* unreasonable, and, therefore, disqualifies a petitioner from equitable tolling—or, for that matter, any period of time that is *per se* reasonable.

Wang has not established in the written record before us what measures he took to reopen his case after he indisputably received his BIA file on October 29, 2005, or after he filed the disciplinary complaint against Muto on January 18, 2006, the last step necessary to comply with the requirements set out in *Matter of Lozada*, 19 I&N Dec. at 639. The BIA gave the benefit of the doubt to Wang and assumed for the argument that Wang first learned of the August 2002 decision dismissing his appeal on October 29, 2005. The BIA emphasized that, even under this assumption, "the motion was not filed until eight months later." The BIA in effect tolled the time from the issuance of its decision in August 2002 until October 2005, when Wang had certainly received the results of his FOIA request and learned of that decision, but it nevertheless found that Wang had failed to show that he exercised due diligence between October 2005 and June 2006, when he filed his motion to reopen. Wang argues that he initiated compliance with *Matter of Lozada* "less than one month after [he] received [his file]" in response to the FOIA request. His attorney confirmed at oral argument, however, that he had submitted the disciplinary complaint against Muto by the middle of January 2006, less than three months after receiving the FOIA materials, thus demonstrating that he could have filed his motion to reopen based on ineffective assistance of counsel at that time. Wang's argument regarding the time at which he initiated compliance with *Matter of Lozada* does not address the concern that he waited an additional five months, after having complied with *Lozada*'s requirements, to file his motion based on

7

that ground. Wang merely asserts that "[i]t is entirely reasonable that several months would elapse between the point at which Wang obtained his present counsel and began to prepare his motion, and the point at which the motion was actually ready to be filed—the process understandably necessitates such an amount of time in order to be properly and adequately completed." At oral argument, however, Wang's attorney stated that after the disciplinary complaint against Muto had been filed, he turned to gathering additional evidence to support his alternative argument that changed country conditions in China also permitted filing the motion to reopen out of time. He offered no explanation for why he had not begun that process immediately after receiving the requested FOIA materials. He also admitted that part of the delay from mid-January to June was due to the general press of business in his law office. Years having passed after the normal 90-day time limit to reopen had expired, counsel's inattention to the need to proceed expeditiously and the resulting delay were properly considered by the BIA in denying the motion to reopen. Because Wang has failed to satisfy his burden of establishing due diligence, we conclude that the BIA did not err in rejecting his argument that the deadline for filing a motion to reopen should be equitably tolled.[10]

We conclude, in addition, that the BIA correctly found that Wang had not demonstrated changed circumstances for the purposes of meeting the requirements of the 8 C.F.R. § 1003.23(b)(4)(i) exception to the 90-day filing deadline for a motion to reopen. *See* note 6 *ante*, at 4 (text of provision).

---

[10] At oral argument, petitioner's counsel apparently conceded that the unexplained delay in filing the motion to reopen reflected a failure in either execution or judgment on his part, rather than any lack of diligence of the petitioner himself. As counsel himself acknowledged, Wang could now file a second motion to reopen premised on the ineffectiveness of his second counsel as well as his first. *See Zhao*, 452 F.3d at 158 (declining to hold petitioner responsible for untimeliness of the first motion to reopen where "nothing in the record suggests [he] knew or reasonably should have known that his [second] counsel, who took [his] fees . . . did not meet the BIA's deadline").

**CONCLUSION**

For the reasons stated above, the petition for review is denied.  The petitioner's request for a stay of removal is also denied.