**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 15-1834**

---

GARFIELD KENAULT LAWRENCE,

       Petitioner,

    v.

LORETTA E. LYNCH, Attorney General,

       Respondent.

---------------------------------

AMERICAN IMMIGRATION COUNCIL; NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD,

       Amici Supporting Petitioner.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued: May 10, 2016             Decided: June 17, 2016

---

Before WILKINSON and AGEE, Circuit Judges, and DAVIS, Senior Circuit Judge.

---

Petition dismissed in part and denied in part by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Senior Judge Davis joined.

---

**ARGUED**: Heidi Rachel Altman, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Petitioner. Matthew Allan Spurlock, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,

for Respondent.  **ON BRIEF**: Morgan Macdonald, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Petitioner. Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Kristin Macleod-Ball, AMERICAN IMMIGRATION COUNCIL, Washington, D.C.; Trina Realmuto, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amici Curiae.

———————

AGEE, Circuit Judge:

Petitioner Garfield Lawrence seeks review of the Board of Immigration Appeals' (the "Board" or "BIA") decision denying his motion to reopen as untimely and denying his request for sua sponte reopening. The Board denied the request, concluding that Lawrence failed to demonstrate due diligence in pursuing his claim. On appeal, Lawrence principally asserts that the Board applied the wrong standard to the equitable tolling inquiry.

For the reasons discussed below, we conclude that the Board acted within its discretion in denying equitable tolling and that we lack jurisdiction to review its decision to deny sua sponte reopening.

## I.   Background

Lawrence is a native and citizen of Jamaica and was admitted into the United States in 1996 as a lawful permanent resident.

Lawrence has multiple Virginia state court marijuana convictions. In August 2006, he was convicted of a marijuana distribution offense and sentenced to six months' imprisonment. Then, in February 2009, he was convicted of two felony marijuana distribution counts and sentenced to two years' imprisonment.

In 2011, the Department of Homeland Security ("DHS") issued a notice to appear charging Lawrence as removable under 8 U.S.C.

§ 1227(a)(2)(A)(ii), for two convictions for crimes involving moral turpitude; under § 1227(a)(2)(A)(iii), for a conviction of an aggravated felony offense relating to the illicit trafficking of a controlled substance; and under § 1227(a)(2)(B)(i), for a conviction relating to a controlled substance. Lawrence admitted the convictions and conceded removability. He denied that he qualified as an aggravated felon and also sought protection from removal under the Convention Against Torture ("CAT").

After a hearing, the immigration judge denied the CAT claim and ordered Lawrence's removal to Jamaica. The judge ruled that Lawrence's convictions for distribution of marijuana constituted "drug trafficking" aggravated felonies under 8 U.S.C. § 1101(a)(43)(B), making Lawrence ineligible for cancellation of removal. See 8 U.S.C. § 1229b(a)(3). Lawrence appealed the decision, and the Board affirmed on December 4, 2012. The 90-day statutory period to file a motion to reopen began on that date. See id. § 1229a(c)(7)(C)(i) (providing that a "motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal").

Lawrence was removed to Jamaica on January 31, 2013. According to his declaration, Lawrence immediately sought to pursue his immigration case from Jamaica but ran into multiple difficulties. He moved three times and struggled to find

4

employment. When he did find regular work, over a year after his deportation, the position was in an isolated, rural area that limited his access to international communication. Lawrence represented that he used a prepaid cell phone, but the reception in his area was too weak to sustain a call. And he stated that reaching an internet café required a 45-minute taxi ride, an expense he claimed he could not afford regularly due to his small weekly salary.

Despite these hurdles, while doing online research in September 2013, Lawrence was able to contact the Post-Deportation Human Rights Project at Boston College (the "Human Rights Project"), a clinical program focused on providing resources to deported immigrants. He initially communicated with a legal fellow who conducted a case intake and collected background information. An attorney with the Human Rights Project, Jessica Chicco, later determined that Lawrence might have a claim under the Supreme Court's 2013 decision in Moncrieffe v. Holder, 133 S. Ct. 1678 (2013).

Lawrence included a declaration from Chicco with his motion to reopen, which stated that she "communicated sporadically" with him "[o]ver the . . . next several months" to obtain relevant documents. A.R. 77. But Chicco observed that "obtaining and sending documents was difficult for [Lawrence] due to his limited access to modes of communication." Id. Once

she determined that Lawrence had a strong case, Chicco "immediately undertook efforts to place the case on a pro bono basis" elsewhere due to "resource constraints" at the Human Rights Project. A.R. 78. She eventually referred the case to the Capital Area Immigrants' Rights Coalition ("CAIR"), Lawrence's current counsel.

On May 19, 2015, Lawrence (represented by CAIR) moved to reopen his removal proceedings for the purpose of seeking cancellation of removal under 8 U.S.C. § 1229b(a). Relying on Moncrieffe, he argued that his convictions were not drug trafficking aggravated felonies and that he should have been permitted to seek cancellation of removal.

Because Lawrence filed his motion to reopen far outside the 90-day statutory window, he requested that his motion be considered as timely based on equitable tolling. Lawrence argued that filing the motion to reopen within 90 days "was impossible" because it was "based on . . . Moncrieffe, which was not announced until 140 days after [the] final administrative removal order was entered" and that he was "diligent in pursuing the legal assistance necessary to draft and file a motion to reopen his case from abroad and could not reasonably be expected to have filed earlier." A.R. 55. Alternatively, Lawrence requested that the Board reopen his case sua sponte.

6

DHS opposed Lawrence's motion as untimely. In June 2015, the Board denied the motion because Lawrence had not "show[n] that his motion should be considered timely," given that he filed "more than 2 years after the [Supreme] Court's [April 2013] decision" in Moncrieffe. A.R. 4. In particular, Lawrence's "documents d[id] not sufficiently show that [he] acted with due diligence" during that period. Id. The Board also found that Lawrence's case did not "present[] an exceptional situation that would warrant" sua sponte reopening. Id.

Lawrence timely filed a petition for review and asserts that we have jurisdiction under 8 U.S.C. § 1252(a). The government, however, contests jurisdiction in addition to opposing the petition on the merits.

## II. Discussion

### A. Equitable Tolling

Lawrence's primary argument on appeal is that the Board erred in denying his request for equitable tolling. In Lawrence's view, the Board failed to apply the proper analysis to determine whether he pursued his claim with due diligence. He contends that the Board rigidly focused only on the amount of time that had passed between the adjudication of removal and the

7

filing of the motion to reopen without sufficiently considering all the circumstances.

We must first determine whether we have jurisdiction to review this claim. Even if Lawrence is correct that none of his convictions constitute an aggravated felony post-Moncrieffe, he remains removable based on his "crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii). The jurisdictional bar of § 1252(a)(2)(C) therefore precludes our exercising jurisdiction over anything but "constitutional claims or questions of law." Id. § 1252(a)(2)(D). The government asserts that Lawrence merely raises a factual dispute. Lawrence counters that the gravamen of his appeal concerns whether the Board applied the wrong standard in conducting the equitable tolling inquiry -- an issue of law.

We take Lawrence's argument at face value and conclude that we do have jurisdiction over that narrow issue. Whether the Board applied the correct standard is a question of law that falls within § 1252(a)(2)(D)'s exception to the criminal jurisdictional bar. See Tran v. Gonzales, 447 F.3d 937, 943 (6th Cir. 2006) (exercising jurisdiction over the question of "whether the BIA used the correct standard"). However, if the Board did apply the correct standard, our jurisdiction does not extend to a "simpl[e] disagree[ment]" with the Board's "factual determination that [Lawrence] had not exercised due diligence."

8

Boakai v. Gonzales, 447 F.3d 1, 4 (1st Cir. 2006); see also Lagos v. Keisler, 250 F. App'x 562, 563 (4th Cir. 2007) (per curiam) (unpublished) (stating that a "simpl[e] disagree[ment]" with the Board's denial of equitable tolling is "merely a factual issue over which we lack jurisdiction").

Turning to the merits, we review the denial of a motion to reopen for abuse of discretion. See 8 C.F.R. § 1003.2(a) (stating that the Board possesses discretion to deny motions to reopen even where movant "has made out a prima facie case" to reopen); INS v. Doherty, 502 U.S. 314, 323 (1992) (reiterating that "the abuse-of-discretion standard applies to motions to reopen regardless of the underlying basis of the alien's request for relief").[1] The Board's decision receives "extreme deference" and should be reversed "only if the decision is arbitrary, capricious, or contrary to law." Sadhvani v. Holder, 596 F.3d 180, 182 (4th Cir. 2009). It "need only be reasoned, not convincing." M.A. v. INS, 899 F.2d 304, 310 (4th Cir. 1990) (en banc), superseded by statute on other grounds. Still, we will reverse the Board if it "fail[s] to offer a reasoned explanation for its decision, or if it distort[s] or disregard[s] important

---

[1] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

aspects of [an] applicant's claim."  Tassi v. Holder, 660 F.3d 710, 719 (4th Cir. 2011).

Here, the Board denied Lawrence's motion as untimely after rejecting his request for equitable tolling.  See Kuusk v. Holder, 732 F.3d 302, 305-06 (4th Cir. 2013) (recognizing that the principles of equitable tolling apply to "untimely motions to reopen removal proceedings").  A petitioner seeking equitable tolling must prove that "(1) the Government's wrongful conduct prevented the petitioner from filing a timely motion; or (2) extraordinary circumstances beyond the petitioner's control made it impossible to file within the statutory deadline."  Id. at 307.[2]  A petitioner who relies on "extraordinary circumstances" must also show that "he has been pursuing his rights diligently."  Holland v. Florida, 560 U.S. 631, 649 (2010).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."  Id. at 653.  The inquiry is "fact-intensive and case-specific," requiring a court to "assess[] the reasonableness of petitioner's actions in the context of his or her particular circumstances."  Avagyan v. Holder, 646 F.3d 672, 679 (9th Cir. 2011).  But this individualized inquiry has limits.  As we have cautioned, the use of equitable tolling "must be guarded and

_____

[2] Lawrence does not contend that any conduct by the government prevented him from filing a timely motion to reopen.

10

infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Kuusk, 732 F.3d at 305. We cannot "loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." Id.

Lawrence maintains that the Board applied a heightened diligence standard that required absolute diligence rather than reasonable diligence and therefore committed an error of law. According to Lawrence, if the Board had properly undertaken an "individualized reasonableness inquiry . . . accounting for all the facts in the record," it would have found Lawrence to have been "reasonably diligent." Opening Br. at 23, 24. He contends the Board's analysis –- contrary to our guidance in Tassi –- was "vague and untethered from applicable legal principles" and "disregard[ed] substantial portions of the record." Id. at 19 (citing Tassi, 660 F.3d at 719).

We are not persuaded that the Board's ruling suffered from any of these asserted errors. First, nothing in the Board's decision suggests that the Board applied an improperly heightened diligence standard. Lawrence emphasizes that the Board never mentioned "reasonable diligence." However, the Board expressly stated that Lawrence had "not sufficiently show[n] that [he] acted with due diligence." A.R. 4 (emphasis added). And we define "due diligence" as "[t]he diligence

11

reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." Diligence, Black's Law Dictionary (10th ed. 2014) (emphasis added). Lest there be any doubt, the dictionary explains that "due diligence" is "[a]lso termed reasonable diligence." Id. In short, the Board set forth the correct standard.

It also applied that correct standard. The Board denied equitable tolling because Lawrence's evidence failed to establish reasonable diligence, not because he failed to take any maximally diligent step in filing his motion. See Jian Hua Wang v. BIA, 508 F.3d 710, 715 (2d Cir. 2007) ("[The] petitioner bears the burden of proving that he has exercised due diligence in the period between discovering the [ground for reopening] and filing the motion to reopen."). In the Board's view, Lawrence "did not show that his motion should be considered timely filed." A.R. 4. Although Lawrence submitted some documents outlining his difficulties, the Board determined that those "documents d[id] not sufficiently show that [he] acted with due diligence" during the two years after Moncrieffe or even the year-and-a-half after he contacted the Human Rights Project. Id. As the Board emphasized, Lawrence would have needed to demonstrate that he "acted with due diligence during the entire period" he sought to toll. Id. (citing Rashid v. Mukasey, 533

12

F.3d 127 (2d Cir. 2008)). But he failed to do that: "the circumstances presented" fell short of "show[ing] that his motion should be considered timely." Id.

In addressing the "circumstances presented," the Board adequately undertook the individualized inquiry that Lawrence contends was missing. The Board not only ruled "[b]ased on the circumstances presented," id., but also explicitly noted that it had "examine[d] the facts and circumstances presented in the motion," A.R. 4 n.2. These comments are not mere window-dressing; they bear out in the analysis. The Board acknowledged Lawrence's argument that he had been "hampered by logistical and communications problems," and it cited the pages of his motion that discuss those problems. See A.R. 4 (citing A.R. 54-57). What's more, the Board summarized two of Lawrence's supporting documents, declarations from him and from Chicco:

> These documents state that the respondent contacted the Post-Deportation Human Rights Project in September 2013; the attorney informed him about the possibility of seeking reopening of his case under Moncrieffe v. Holder; "[o]ver the course of the next several months" they "communicated sporadically" until the attorney obtained documents regarding the respondent's convictions; and in February 2015 this attorney referred the respondent to his current counsel.

Id. (citations omitted).

The Board simply found Lawrence's individual circumstances to be insufficient. While the "communications problem" could account for some delay, Lawrence provided "no detail" about how

13

the problems actually accounted for his lengthy delay. A.R. 4 n.1. The Board acknowledged Chicco's statement that Lawrence had "difficulties in obtaining and sending documents regarding his criminal convictions." Id. But Lawrence "d[id] not explain" why obvious alternative routes to obtain the information more efficiently were not available: perhaps "he or the attorney could . . . have obtained relevant documents with the assistance of his family . . . or by reviewing or obtaining a copy of the administrative record."[3] Id. And contrary to Lawrence's view, demanding an explanation for why a time-consuming course of action qualifies as "reasonable diligence" is not tantamount to the Board requiring "maximum feasible diligence." Holland, 560 U.S. at 653.

Additionally, with regard to the application of the diligence standard, Lawrence argues that the Board improperly focused on the length of the delay before he filed his motion -- over two years after Moncrieffe. True, the diligence inquiry cannot hinge on the elapsed time alone. See, e.g., Gordillo v. Holder, 640 F.3d 700, 705 (6th Cir. 2011) ("[T]he mere passage of time -- even a lot of time -- before an alien files a motion

---

[3] We do not suggest that a petitioner must anticipate and address every conceivable step he could have taken to file his motion more quickly. But a petitioner's failure to address why he did not take basic, minimal steps to file more quickly is relevant to the due diligence analysis.

14

to reopen does not necessarily mean she was not diligent."). But as discussed above, that is not what happened here. After noting the length of the filing delay, the Board discussed why Lawrence's evidence had not adequately accounted for that period of time. The Board thus appropriately used the passage of time as a backdrop against which it considered, and rejected, Lawrence's arguments.

In sum, the Board conducted an appropriate, individualized inquiry into whether Lawrence exhibited reasonable diligence to warrant equitable tolling. Having articulated and applied the correct standard in reviewing Lawrence's claim for equitable tolling, the Board did not abuse its discretion.

Nor did it abuse its discretion for either of the procedural deficiencies that Lawrence asserts. For the reasons discussed above with regard to an individualized inquiry, we disagree with Lawrence's position that the Board "disregarded important aspects of [his] claim." Tassi, 660 F.3d at 719. The Board discussed the most important aspects of Lawrence's claim -- those relating to the communications issues -- and was reasonably detailed in doing so. While the Board did not discuss each of Lawrence's exhibits, it had no obligation to go page by page through the evidence in making a ruling. See Hadjimehdigholi v. INS, 49 F.3d 642, 648 n.2 (10th Cir. 1995)

15

("[T]he BIA is not required to discuss every piece of evidence when it renders a decision.").

Likewise, we conclude that, contrary to Lawrence's assertion, the Board provided a sufficiently "reasoned explanation for its decision." Tassi, 660 F.3d at 719. Again, as discussed above, the Board explained that Lawrence failed to carry his burden of accounting for his reasonable diligence throughout the two-year period. Lawrence might disagree with this conclusion, but, as noted, the Board's decision "need only be reasoned, not convincing." M.A., 899 F.2d at 310.

We conclude that the Board appropriately analyzed and rejected Lawrence's request for equitable tolling. It therefore did not abuse its discretion in denying Lawrence's motion to reopen as untimely.[4]

---

[4] We note that even if Lawrence had received equitable tolling and succeeded in his motion to reopen, the entire endeavor could well have come to naught if the Attorney General declined to grant Lawrence's application for cancellation of removal. That decision is discretionary and generally not subject to judicial review. See 8 U.S.C. § 1252(a)(2)(B)(i). While this is a policy matter within the purview of Congress and the Executive Branch, we note that significant judicial resources might be saved in certain cases if it were alternatively established in the record that the Attorney General would not exercise her discretion to grant cancellation of removal. See Mena v. Lynch, No. 15-1009, --- F.3d ---, 2016 WL 1660166, at *5 n.7 (4th Cir. Apr. 27, 2016).

B. Sua Sponte Reopening

Lawrence alternatively argues that the Board should have reopened the case sua sponte, regardless of whether it determined equitable tolling was appropriate. See 8 C.F.R. § 1003.2(a) (providing that the Board "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision").

But we lack jurisdiction to review how the Board exercises its sua sponte discretion. In Mosere v. Mukasey, 552 F.3d 397 (4th Cir. 2009), we followed the lead of other circuits and concluded that such Board rulings were unreviewable:

> [B]ecause there are no meaningful standards by which to evaluate the BIA's decision not to exercise its power to reopen under 8 C.F.R. § 1003.2(a), we find, in concert with every court to have considered this issue, that we lack jurisdiction to review the BIA's refusal to reopen [the petitioner's] case sua sponte.

Id. at 398-99.

Lawrence provides no convincing basis for the Court to distinguish Mosere and exercise jurisdiction over a sua sponte decision.[5] Because Mosere is the rule in this circuit, we decline jurisdiction over this issue.

---

[5] Lawrence's reliance on Mahmood v. Holder, 570 F.3d 466 (2d Cir. 2009), is misplaced. There, the Second Circuit found jurisdiction and remanded for the Board to reconsider exercising its sua sponte discretion. Id. at 467. But it did so only after concluding that the Board "may have . . . misperceived the legal background and thought, incorrectly, that a reopening
(Continued)

17

## III. Conclusion

For all these reasons, Lawrence's petition for review of the Board's decision is

DISMISSED IN PART AND DENIED IN PART.

---

would necessarily fail." Id. at 469. Even if we were to adopt such an exception to Mosere, it would not apply here. Nothing suggests the Board "misperceived" Lawrence's underlying Moncrieffe argument or thought the "reopening would necessarily fail." To the contrary, the Board declined to use its sua sponte power because of the untimely filing: it concluded that the case did not present an "exceptional situation" and noted that the sua sponte power "is not meant to be used as a general cure for filing defects." A.R. 4.