**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1619**

---

THO DUC HUYNH,

       Petitioner,

    v.

TODD BLANCHE, Acting Attorney General,

       Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Argued:  May 7, 2026                                                    Decided:  June 9, 2026

---

Before WILKINSON, RUSHING, and HEYTENS, Circuit Judges.

---

Petition denied by unpublished opinion. Judge Heytens wrote the opinion, which Judge Wilkinson and Judge Rushing joined.

---

**ARGUED:** Alex Christopher Boota, MCDERMOTT WILL & SCHULTE LLP, Washington, D.C., for Petitioner. Rodolfo David Saenz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Simon Y. Sandoval-Moshenberg, Alaina Taylor, MURRAY OSORIO PLLC, Fairfax, Virginia; Paul W. Hughes, Sarah P. Hogarth, MCDERMOTT WILL & SCHULTE LLP, Washington, D.C., for Petitioner. Brett Shumate, Assistant Attorney General, Lindsay B. Glauner, Margot L. Carter, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

TOBY HEYTENS, Circuit Judge:

The Board of Immigration Appeals denied a noncitizen's motion to reopen his removal proceedings on timeliness grounds and declined to exercise its authority to order sua sponte reopening. We deny the petition for review.

I.

In 1997, a state court convicted petitioner Tho Duc Huynh of violating Virginia Code § 18.2-67.4. In 2003, an immigration judge concluded that conviction rendered petitioner removable on two grounds: *first*, because it was an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii); and *second*, because it constituted a "crime involving moral turpitude" under Section 1227(a)(2)(A)(i). The Board of Immigration Appeals affirmed that decision in 2004, thus finalizing petitioner's order of removal. See 8 U.S.C. § 1101(a)(47)(B); *Lopez v. Bondi*, 167 F.4th 223, 227 (4th Cir. 2026). Petitioner did not pursue judicial review at that point.

The government did not immediately seek to remove petitioner because there was "no repatriation agreement between the United States and Vietnam" at the time. *Ly v. Hansen*, 351 F.3d 263, 265 n.1 (6th Cir. 2003); cf. Gov't Rule 28(j) Ltr., ECF No. 66 (filed May 12, 2026) (asserting the government began removing "Vietnamese citizens who (like [petitioner]) entered the United States before 1995 . . . to Vietnam by at least July 2017"). Despite the final order of removal, petitioner remained in the United States for the next two decades. In 2005 and 2010, petitioner sought postconviction relief from his 1997 state-court conviction. Those efforts were unsuccessful in state trial court, and it does not appear petitioner appealed. Petitioner also did not seek to reopen his removal proceedings

2

between 2004 and 2025.

On January 31, 2025, the government detained petitioner with plans to remove him to Vietnam. On March 21, 2025—49 days later—petitioner asked the Board to reopen his case because "two key changes in law" meant his 1997 conviction "no longer render[ed] him removable." JA 175. Despite acknowledging that such motions generally must be filed within 90 days after a final removal order, see 8 U.S.C. § 1229a(c)(7)(C)(i), petitioner noted that deadline is subject to equitable tolling and asserted such tolling was warranted in his case. In the alternative, petitioner asked the Board to exercise its discretion to reopen his removal proceedings sua sponte. See 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.").

The Board denied petitioner's motion to reopen and declined to reopen sua sponte. It noted that *Sessions v. Dimaya*, 584 U.S. 148 (2018)—one of "two key changes in law" identified in petitioner's motion, JA 175; see JA 179–80 (discussing *Dimaya*)—was decided "years before" petitioner claimed to have first heard about it from a lawyer in February 2025. JA 4. The Board stated that petitioner "d[id] not explain what actions he took during the years after entry of the Board's decision and between issuance of . . . *Dimaya* and" his detention "that exhibit diligence in pursuing his rights, aside from inquiring about post-conviction relief with an attorney in 2005 and 2010." *Id.* The Board emphasized that "[l]ack of knowledge of the law . . . is not enough," and it rejected petitioner's assertions that his "situation [was] comparable to" *Williams v. Garland*, 59 F.4th 620 (4th Cir. 2023), a case in which this Court held equitable tolling was warranted. JA 4. The Board also determined sua sponte reopening was "not appropriate,"

3

stating such relief is warranted only in "exceptional circumstances" and "is not meant to cure filing defects or circumvent the [governing] regulations where enforcing them might result in hardship." *Id.* In the Board's view, a noncitizen "becoming eligible for relief after remaining in the United States for decades following the entry of a final order of removal and the denial of a Petition for Review is a common, rather than exceptional, circumstance" and did "not warrant [its] consideration of an untimely motion." *Id.*

## II.

We start with the Board's denial of petitioner's motion to reopen.

## A.

This Court's jurisdiction to review "final order[s] of removal," 8 U.S.C. § 1252(a)(1), "encompasses review of decisions refusing to reopen or reconsider such orders" on a party's motion. *Mata v. Lynch*, 576 U.S. 143, 147 (2015); see 8 U.S.C. § 1252(b)(6) ("[A]ny review sought of a motion to reopen or reconsider [a removal order] shall be consolidated with the review of the [underlying] order."). "[T]he reason for the [Board]'s denial" of such a motion "makes no difference to the jurisdictional issue." *Mata*, 576 U.S. at 148. In particular, our jurisdiction covers situations—like this one—"when the Board denies a motion to reopen because it is untimely" or "rejects a request for equitable tolling." *Id.*

Although "we generally review for abuse of discretion the Board's refusal to reopen a case," *Romero v. Bondi*, 150 F.4th 332, 338 (4th Cir. 2025), "the proper standard depends on the discrete question we must review," *Williams v. Garland*, 59 F.4th 620, 635 (4th Cir. 2023). *Williams* states that the Board's "decision to deny equitable tolling presents a mixed

4

question we must review de novo," *id.* at 639, and the government does not deny that conclusion binds us here. See Gov't Br. 11–12. We thus apply the standards outlined in that decision.

### B.

The Board committed no legal error in concluding the facts cited in petitioner's motion to reopen did not warrant equitable tolling.

Because petitioner did not assert the government engaged in "wrongful conduct" that "prevented [him] from filing a timely motion," he had to "prove" there were "extraordinary circumstances beyond [his] control [that] made it impossible for him to file within the statutory deadline." *Lawrence v. Lynch*, 826 F.3d 198, 203–04 (4th Cir. 2016) (quotation marks removed). Petitioner also had to "show that he" was "diligent[]" in "pursuing his rights." *Id.* at 204 (quotation marks removed). Although the standard is "reasonable diligence, not maximum feasible diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citations and quotation marks removed), it still creates "a high bar" to relief, *Williams*, 59 F.4th at 640. In particular, "the use of equitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Lawrence*, 826 F.3d at 204 (quotation marks removed).

Petitioner's reopening motion identified two "fundamental change[s]" in law that constituted "extraordinary circumstances outside of [his] control." JA 178. *First*, it asserted that the Supreme Court's 2018 decision in *Dimaya* "affect[ed] whether" petitioner's 1997 conviction was "for an aggravated felony" (one of two grounds on which petitioner was ordered removed). JA 178. *Second*, the motion argued that a 2022 decision by Virginia's

5

intermediate appellate court established that petitioner's 1997 conviction did not carry "a sentence of one year or more" and thus could not constitute a crime of moral turpitude under federal immigration law. *Id.* (discussing *Belcher v. Commonwealth*, 878 S.E.2d 19 (Va. Ct. App. 2022)); see 8 U.S.C. § 1227(a)(2)(A)(i)(II) (stating a "crime involving moral turpitude" triggers removability only if it is one "for which a sentence of one year or longer may be imposed").

Like *Williams*—and the Board's decision here—we assume that intervening judicial decisions can "present[] an extraordinary circumstance that would warrant equitable tolling." 59 F.4th at 643. But, even applying de novo review, we see no error in the Board's conclusion that the facts identified in petitioner's reopening motion failed to "demonstrate" he had been "pursuing [his] rights diligently." *Id.* at 640 (quotation marks removed).

As in *Williams*, we start by identifying "the proper point in time from which to measure [petitioner's] diligence," which turns on when he "had . . . 'rights' to pursue." 59 F.4th at 640–41. Although petitioner criticizes the Board for treating the Supreme Court's 2018 decision in *Dimaya* "as the relevant starting point," Petr. Br. 29, we conclude that argument is not well taken. The Board was considering a motion to reopen that described *Dimaya* and *Belcher* as separate "fundamental change[s] in law," JA 178, and never so much as hinted (as petitioner now argues to us) that 2022 "is the relevant starting point for measuring" his diligence. Petr. Br. 29. No less than a trial court, the Board was entitled to "accept [petitioner's] framing of the dispute before it." *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 753–54 (4th Cir. 2025).

But even positing that *Belcher* provides the relevant starting point for the diligence

6

inquiry, we cannot agree that "*Williams* controls this case." Petr. Br. 16.[1] To the contrary, this case is materially different from *Williams*.

*First*, even making all assumptions in petitioner's favor, the delay in seeking relief here was twice as long as in *Williams*. The petitioner in *Williams* "discovered his rights just one year after the [Supreme] Court enunciated them" and filed a motion to reopen "just one month later." 59 F.4th at 626, 643. Here, in contrast, petitioner did not move to reopen his removal proceedings until nearly two-and-a-half years after *Belcher* was decided. True, "the mere passage of time—even a lot of time—before" a noncitizen "files a motion to reopen does not necessarily mean [the noncitizen] was not diligent." *Gordillo v. Holder*, 640 F.3d 700, 705 (6th Cir. 2011). But "the longer" a noncitizen "takes to file [a] motion to reopen, the more explaining [the noncitizen] has to do." *Id.* And here, we know nothing about petitioner's actions between when *Belcher* was decided and his detention beyond his representation that he "reported to ICE as [he] was supposed to and continued to renew [his] work permit." JA 262.

*Second*, many of the extenuating circumstances the Court relied on in *Williams* are absent here. See 59 F.4th at 641 (emphasizing "the totality of the circumstances [the

---

[1] Aside from scattered "passing shot[s]," *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quotation marks removed), petitioner's brief argues that he "satisfies the diligence prong for equitable tolling," Petr. Br. 35, not that we should grant the petition for review so that the Board can redo its diligence analysis using the correct starting point. To reiterate: Given the arguments petitioner made before the Board, we do not hold it applied the wrong starting point. Rather, we explain why—even assuming that petitioner's framing is correct—we still would reject his equitable tolling argument under de novo review. See *Immigration & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam).

7

petitioner had] presented"). *Williams* pointed out that—during the relevant diligence period—the petitioner in that case "had been in Jamaica for eleven years," "was not allowed back in the United States, not even to visit," "ma[de] only a few dollars a week after room and board," "ha[d] no access to the internet," and was largely cut off from his family and friends. 59 F.4th at 624, 642; see *id.* at 626. Here, in contrast, petitioner was in the United States during the entire period for which he seeks tolling—a place where he operates a business and has the support of "many family members and friends." Petr. Br. 10. We neither suggest petitioner is a person of great means nor minimize the health challenges identified in his motion to reopen and its accompanying materials. But even so, this case is less extreme than *Williams*.

Petitioner invokes the Ninth Circuit's decision in *Eskilian v. Bondi*, 172 F.4th 682 (9th Cir. 2026), but that case is distinguishable. For one thing, the relevant motion to reopen in *Eskilian* was based on ineffective assistance of counsel rather than (as here) new decisional law. See *id.* at 685; cf. *Williams*, 59 F.4th at 641 (stating that such claims warrant "a different analysis" than the sort of pure change-in-law claim petitioner presents here). And to the extent *Eskilian* announced a general rule, that rule would not cover petitioner because he has never been "deemed 'stateless.'" 172 F.4th at 688. Finally, *Eskilian* considered a far different factual record than the one we encounter here and emphasized "the unique circumstances in [that] case." *Id.* at 689. In *Eskilian*, a new statute took effect in 2017. See *id.* at 686. The noncitizen found out about that change in 2018, succeeded in having her underlying conviction vacated by mid-2019, and filed her first motion to reopen less than two months later. See *id*. Here, in contrast, the motion to reopen identified no

8

steps petitioner took to protect his rights in the years after *Belcher*—much less *Dimaya*—was decided. See *Lawrence*, 826 F.3d at 204 (stating the equitable tolling analysis requires a "fact-intensive and case-specific" inquiry (quotation marks removed)).

We question neither the sincerity nor the reasonableness of petitioner's long-held belief that the Executive Branch would be unable or unwilling to force him to leave this country and return to Vietnam. But the lack of a repatriation agreement between two countries confers no legal right for citizens of one country to remain in another. Cf. *Orellana v. Bondi*, 141 F.4th 560, 565–67 (4th Cir. 2025) (concluding the government immigration policy document at issue was not intended "for the benefit of any individual [noncitizen] or intended to have the force of law"). Instead, the question before us is whether petitioner's motion to reopen established that he had "made a reasonable effort to pursue" any "rights" he had to remain in this country after becoming "entitled to relief." *Williams*, 59 F.4th at 636, 640 (quotation marks removed). For the reasons stated above, we conclude the answer is no and that the Board committed no legal error in denying the motion to reopen.[2]

---

[2] Despite arguing that no periods before *Belcher* are relevant to the diligence inquiry, other parts of petitioner's argument focus on his actions dating back to his original removal proceedings in 2004. Applying a wider lens would not change our conclusion here. Although petitioner "has challenged his removability from the beginning of removal proceedings," Petr. Br. 22, it is undisputed that he did not seek judicial review of the final order of removal. True, petitioner twice unsuccessfully asked state trial courts to vacate his 1997 conviction, but there is no indication he appealed either decision. And despite now acknowledging that his *Dimaya*-based argument would alone have been enough to make him eligible for certain forms of discretionary relief, petitioner did not seek reopening until almost seven years after *Dimaya* was decided, and his filings with the Board did not discuss any actions he took between *Dimaya* and when he was detained.

9

III.

Petitioner also asserts that we should "vacate and remand the [Board's] *sua sponte* reopening determination because it is premised on an erroneous legal understanding of [petitioner's] motion." Petr. Br. 17. As petitioner acknowledges, this Court has held that we generally "lack jurisdiction to review [the Board's] refusal to *sua sponte* reopen," *Mosere v. Mukasey*, 552 F.3d 397, 401 (4th Cir. 2009), but has "expressly left open" whether we have jurisdiction to consider "legal errors 'underlying' the [Board's] exercise of 'its sua sponte power,'" *Williams*, 59 F.4th at 643 n.10 (quoting *Lawrence*, 826 F.3d at 207 n.5). As in *Lawrence,* we need not resolve the precise scope of any "such . . . exception to *Mosere*," *Lawrence*, 826 F.3d at 207 n.5, because any error the Board may have made in understanding petitioner's request for sua sponte reopening would have been harmless as a matter of law.

In his own words, petitioner's "principal argument" for sua sponte reopening—and the only one he claims the Board "did not address . . . at all"— was that he "*was no longer removable*" because of the combination of *Dimaya* and *Belcher*. Petr. Br. 50–51 (emphasis added). After this petition for review was fully briefed, however, this Court decided *Perdomo Ulloa v. Bondi*, 171 F.4th 300 (4th Cir. 2026), which rejected the exact argument petitioner made based on *Belcher*. See *id.* at 301 (holding that, notwithstanding *Belcher*, "an offense that carries a maximum sentence of twelve months" is "'a crime for which a sentence of one year or longer may be imposed' within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i)"). For that reason, petitioner now concedes that he is removable under the crime of moral turpitude provision, regardless of whether his 1997 offense remains an

10

aggravated felony after *Dimaya*. So even if the Board failed to appreciate one component of petitioner's argument for sua sponte reopening, it would be an "idle and useless formality" to remand for further proceedings because "there is [now] not the slightest uncertainty" that he is removable. *Morgan Stanley Cap. Grp. Inc. v. Public Util. Dist. No. 1 of Snohomish Cnty.*, 554 U.S. 527, 545 (2008) (quotation marks removed) (first quote); *Calcutt v. Federal Deposit Ins. Corp.*, 598 U.S. 623, 630 (2023) (per curiam) (alterations and quotation marks removed) (second quote); see also *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 589–91 (reaffirming *Calcutt*'s exception to ordinary remand principles in administrative law).

*    *    *

The petition for review is

*DENIED*.

11