**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2327**

ELVIS GEOVANY CARDENAS-MARTINEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 4, 2021                                           Decided: July 26, 2021

Before WILKINSON, WYNN, and HARRIS, Circuit Judges.

Petition for review denied by unpublished opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Wynn joined. Judge Wilkinson wrote a separate concurring opinion.

**ARGUED:** Hyok Frank Chang, WILEY REIN, LLP, Washington, D.C., for Petitioner. Sara J. Bayram, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Jenny Kim, Melody Vidmar, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C.; Madeline J. Cohen, Holly J. Wilson, Spencer C. Brooks, WILEY REIN, LLP, Washington, D.C., for Petitioner. Joseph H. Hunt, Assistant Attorney General, Civil Division, W. Manning Evans, Senior Litigation Counsel, Office of Immigration Litigation, Christopher A. Bates, Senior Counsel

to the Assistant Attorney General, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Petitioner Elvis Geovany Cardenas-Martinez was denied asylum after a hearing before an immigration judge, and the Board of Immigration Appeals ("BIA") dismissed his appeal. This case arises from Cardenas-Martinez's subsequent motion to reopen, filed with the BIA, based primarily on what he claims was ineffective assistance of counsel before the immigration judge. The BIA denied that motion, and Cardenas-Martinez now petitions our court for review. For the reasons below, we deny the petition.

## I.

### A.

Elvis Geovany Cardenas-Martinez, a native of Honduras, entered the United States without authorization in May of 2014, when he was 15 years old. Cardenas-Martinez came to this country to join his mother, Gladis Martinez, who had been in the United States since he was nine months old, and had left her son in the care of his maternal grandmother and then an aunt. When Cardenas-Martinez arrived, he was designated an unaccompanied minor, given a Notice to Appear for removal proceedings, and released into the custody of his mother.

Shortly before leaving Honduras in 2014, Cardenas-Martinez began having recurring seizures, which were diagnosed as epilepsy. Since arriving in the United States, Cardenas-Martinez also has been diagnosed with ADHD, anxiety, and "major neurocognitive defects," especially with respect to his "impulse inhibition, attention, and memory." A.R. 1097–98. His doctors have raised the possibility of autism, as well.

3

In October of 2015, Cardenas-Martinez – then represented by attorney Joanna Gaughan – applied for asylum. Asylum may be granted to "'refugees' who are unable or unwilling to return to their native country 'because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group.'" *Canales-Rivera v. Barr*, 948 F.3d 649, 653–54 (4th Cir. 2020) (quoting 8 U.S.C. § 1101(a)(42)(A)). Cardenas-Martinez asserted that he had been beaten in Honduras because of his "disorder or disability" – an apparent reference to his epilepsy – and that he feared return to Honduras because of the prospect of future abuse and because he could not receive adequate medical care in that country. He proposed three "particular social group[s]," 8 U.S.C. § 1101(a)(42)(A), to anchor his claim: first a category of all "Honduran children lacking effective parental/familial protection," and then two subsets of that group, one for children "who suffer from epilepsy or seizures" and one for children "who are disabled." A.R. 91. With the application, Gaughan filed supporting documents, including Cardenas-Martinez's medical records and mental health evaluations.

An officer with the United States Citizenship and Immigration Services ("USCIS") interviewed Cardenas-Martinez in February of 2016. During the interview, however, Cardenas-Martinez – as later recounted by Gaughan – "was unable to answer the questions posed to him and just sat there with a blank stare on his face." A.R. 305. The next month, USCIS notified Cardenas-Martinez that it was denying his asylum application because he had failed to demonstrate either past persecution or a likelihood of future persecution on the basis of his membership in a particular social group, and that his case would be referred to immigration court.

A few months later, Gaughan withdrew from representation and Cardenas-Martinez retained the lawyer whose performance is at issue in this case, Hila Moss. Moss then submitted a "Request for Prosecutorial Discretion" ("PD Request") to the Department of Homeland Security ("DHS") on Cardenas-Martinez's behalf.[1] Moss's application emphasized Cardenas-Martinez's cognitive impairments, including the possibility of autism, noting his inability to speak during his USCIS interview (as described to her by Gaughan) and his "problems forming words [and] concentrating[.]" A.R. 304. Given his "frail" mental status, A.R. 306, and its apparent effect on his performance during his USCIS interview, Moss raised questions about Cardenas-Martinez's upcoming hearing in immigration court, A.R. 305 (stating that it is "unclear how that hearing will go given Elvis's inability to verbally communicate"). DHS denied the PD Request.

Moss also filed an updated asylum application for Cardenas-Martinez. In this application, Cardenas-Martinez focused primarily on prior attacks by gang members, asserting that his epilepsy and cognitive conditions made him a target for gangs. He expressed fear that the gangs would continue to harm him if he returned to Honduras

---

[1] Then-current policy allowed DHS to exercise discretion to forgo removal of certain noncitizens deemed not to be an "enforcement priority." *See* Mem. from Sec'y Jeh Charles Johnson to U.S. Immigr. & Customs Enf't et al., *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* 5–6 (Nov. 20, 2014). That guidance subsequently was rescinded, but has since been reimplemented, and DHS again has the authority to grant requests for prosecutorial discretion. *See* Mem. from Acting Sec'y David Pekoske to U.S. Customs & Border Prot. et al., *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Jan. 20, 2021); Mem. from Acting Dir. Tae D. Johnson to All ICE Emps., *Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Feb. 18, 2021).

because his "mental problems" make him "susceptible to systemic gang violence and physical abuse." A.R. 287. He also described physical abuse at the hands of the aunt with whom he had stayed.

Cardenas-Martinez appeared at his hearing, through a Spanish translator and with Moss as counsel, on January 25, 2017. Before starting the hearing, the immigration judge ("IJ") noted that she had not received the supporting documents that accompanied his original asylum application – which included, as described above, documents related to his mental health evaluations. The IJ soon realized that although she had not been aware of Cardenas-Martinez's treatment for mental health issues, he was "being seen for possible ADHD and autism diagnoses," as Moss explained. A.R. 1228. Nevertheless, when the IJ asked Moss if she was raising any "mental competency issues," Moss responded that she was not. A.R. 1228.

The IJ entered the supporting medical documentation into the record. And then she proceeded to ask Cardenas-Martinez a series of questions about the nature of the proceeding, in order to determine his competency. As she explained to Moss, although Moss was not raising the issue, she felt compelled to assure herself of Cardenas-Martinez's competence to participate in the proceeding: "[Y]ou brought up autism, counsel. So I don't have any medical records but I did need to be confident that this young man can understand why he's here and what's going on." A.R. 1231. After a colloquy regarding the purpose of the proceeding, the possible consequences, and the roles of the various participants in the hearing – most of which Cardenas-Martinez indicated he understood – the IJ concluded that Cardenas-Martinez was competent and so proceeded with the hearing.

6

*See* A.R. 1233 (finding that Cardenas-Martinez "appears to understand my role, why he's here").[2]

Cardenas-Martinez was the only witness at the hearing, and his testimony badly undermined the claim that he had been targeted for abuse in Honduras because of his epilepsy or cognitive conditions. He recounted physical abuse by his aunt but attributed it only to the fact that "she wanted me to only do housework," without mention of his epilepsy or mental health. A.R. 1238. And while Cardenas-Martinez confirmed both that gangs had targeted and beaten him in Honduras and that he had been diagnosed with epilepsy while still in that country, he explained that gang members never mentioned his epilepsy and indeed were unaware of his condition. On redirect, Moss did elicit testimony that Cardenas-Martinez was afraid that the gangs would discover his epilepsy if he returned to Honduras – but that was because they would "start bothering me a lot and . . . give me a lot of nicknames." A.R. 1262. And asked whether he knew of the gangs "ever hurt[ing] somebody that has a disease like yours," Cardenas-Martinez responded that he did not. A.R. 1263.

Although Cardenas-Martinez's mother was in the building during the hearing, Moss did not call her to testify. Moss told the IJ that Cardenas-Martinez, who was age 18 at the time, preferred to testify by himself. Moreover, Moss explained, because his mother had

---

[2] The one exception came when Cardenas-Martinez initially misidentified the government's attorney as Moss's assistant. The IJ corrected this misunderstanding before resuming her questioning and before the government attorney questioned Cardenas-Martinez.

been in the United States since Cardenas-Martinez was a baby – years before his epilepsy diagnosis or any of the events at issue – she had no first-hand relevant knowledge.

The IJ denied Cardenas-Martinez's asylum claim at the close of the hearing. The IJ again addressed Cardenas-Martinez's competence, finding him "clearly competent to have testified today without hesitation or doubt." A.R. 1188. That finding was based both on the IJ's preliminary colloquy and also on Cardenas-Martinez's "clear[]" and coherent testimony at the hearing. A.R. 1188. The IJ also found Cardenas-Martinez's testimony credible and accepted his version of the facts.

Nevertheless, the IJ determined, Cardenas-Martinez could not satisfy the requirements for asylum, having failed to demonstrate that "his life or freedom would be threatened on account of a protected ground if returned to Honduras." A.R. 1190. The IJ understood the gist of Cardenas-Martinez's claim to be that gangs had and would persecute him because of his disability. She was prepared to assume that "children with disabilities and other forms of special problems" could constitute a "particular social group" within the meaning of the asylum statute. A.R. 1191. But based on Cardenas-Martinez's own testimony, as described above, the IJ concluded that he could not show that any abuse he suffered was "on account of" that protected status, as required for relief. A.R. 1193.[3]

---

[3] The IJ also denied relief on Cardenas-Martinez's claims for withholding of removal and protection under the Convention Against Torture. Cardenas-Martinez has not argued before the BIA or this court that he can meet the standards for those forms of relief – which are more demanding than those for asylum, *see Anim v. Mukasey*, 535 F.3d 243, 252–53 (4th Cir. 2008) – and so we do not address them further.

Cardenas-Martinez sought review before the Board of Immigration Appeals ("BIA" or "Board"), arguing primarily that the IJ erred in failing to consider the three particular social groups proposed in his initial application, all of which included a lack of parental or family protection. On October 24, 2017, the Board dismissed the appeal, ruling that even if the IJ had considered the particular social groups "exactly as they were articulated" in his application, the outcome would have been the same because "lacking parental or family protection does not place someone in a particular social group." A.R. 1146. Cardenas-Martinez did not petition for review by this court.

**B.**

Instead, in May of 2019, Cardenas-Martinez, now represented by new counsel, moved for reopening before the BIA. Cardenas-Martinez argued, first, that Moss, his lawyer at his hearing before the IJ, had provided ineffective assistance of counsel under *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). He also sought reopening on the basis of newly available evidence of his cognitive impairments: the evaluation of a neuropsychologist diagnosing him with ADHD, anxiety disorder, and an unspecified cognitive disorder; and a state court order from North Carolina adjudicating him incompetent and appointing his mother as his guardian.

In the decision now before us on review, the BIA denied rehearing, finding that Cardenas-Martinez had not established a basis for reopening proceedings.[4] First, the Board

---

[4] As the BIA observed, *see* A.R. 3, Cardenas-Martinez's motion to reopen also was untimely, because it was filed more than 90 days after the Board's dismissal of his appeal, *see* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Cardenas-Martinez argued that

concluded that Cardenas-Martinez had shown neither deficient performance by his counsel nor prejudice from her conduct – both required to make out a claim of ineffective assistance under *Lozada*. The Board began with Cardenas-Martinez's primary claim: that Moss provided ineffective assistance when she failed to raise the issue of Cardenas-Martinez's competency and seek safeguards under *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). Under that case, as the Board explained, when there are "indicia of incompetency," an IJ is required to make "further inquiry" to determine whether a noncitizen is competent to proceed and, if not, to "apply appropriate safeguards" to protect his rights. A.R. 4; *see M-A-M-*, 25 I. & N. Dec. at 480, 481, 484. And here, Cardenas-Martinez asserted, Moss – having recently filed a PD Request emphasizing his cognitive impairments and their effect on his interview with USCIS – had an obligation to call the issue to the attention of the IJ and seek safeguards under *M-A-M-*.

The Board disagreed. It recognized that Moss had expressly declined to raise mental competency issues at Cardenas-Martinez's hearing, even when asked by the IJ. But, the Board emphasized, the IJ nevertheless had gone on to conduct a colloquy to assure herself that Cardenas-Martinez was competent to proceed, and her determination of competency was consistent with the results of that colloquy and also with Cardenas-Martinez's actual

---

the deadline should be equitably tolled because his motion was filed within three months of his mother's appointment as his guardian. The BIA declined to resolve that issue, instead denying Cardenas-Martinez's motion on the merits. Like the BIA, we have no occasion to decide whether Cardenas-Martinez can satisfy the "rigorous standard" governing equitable tolling in this context. *Kuusk v. Holder*, 732 F.3d 302, 305 (4th Cir. 2013); *see* A.R. 3 (describing *Kuusk* standard).

testimony at the hearing, in which he "accurately responded to questions and understood the purpose of his hearing." A.R. 4 (internal quotation marks omitted). The BIA also addressed Cardenas-Martinez's previous inability to answer questions during his USCIS interview, as described by Moss in her PD Request.[5] The Board noted that "mental competency is not a static condition," and may interfere with functioning at different times and in different ways. A.R. 4. It also detailed Moss's letter in response to the ineffective assistance complaint, in which she explained that notwithstanding his "developmental delays," Cardenas-Martinez in her experience had been engaged, attentive, and able to understand his case – consistent with his performance during the hearing itself. A.R. 4.

The Board went on to reject the remainder of Cardenas-Martinez's ineffective assistance claims, starting with Moss's failure to rely on *Temu v. Holder*, 740 F.3d 887 (4th Cir. 2014), to support his particular social group claim. In that case, our court held that individuals in Tanzania "with bipolar disorder who exhibit erratic behavior" qualify as a particular social group. *Id.* at 890, 892. But that case was not directly on point, the Board explained, because it involved a different disorder and a different country's response to that disorder. And in any event, the IJ had *credited* Cardenas-Martinez's proposed social group of "children with disabilities and other forms of special problems," *see* A.R. 1191, and instead rejected his claim for want of a causal link between his disability and the abuse

---

[5] The BIA refers here to a letter submitted by Cardenas-Martinez's first attorney, Gaughan. But no such letter was submitted by Cardenas-Martinez, and the BIA appears to be describing instead Moss's PD Request, which is found at the citation provided by the BIA and uses language closely tracking the BIA's. As noted above, however, Moss's PD Request itself relies on a description of the USCIS interview provided by Gaughan.

11

he suffered – so any failure to offer additional support for his proposed social group would have made no difference to the case. Nor did Moss's failure to bring Cardenas-Martinez's mother into the hearing constitute ineffective assistance, the Board found, given that it came at Cardenas-Martinez's own request, and that his mother was not present in Honduras during any of the alleged past persecution. And finally, Moss's failure to pursue the particular social groups articulated in Cardenas-Martinez's original application was neither deficient nor prejudicial: Moss did raise that issue on appeal, and the BIA rejected it on the ground that consideration of different particular social groups would have made no difference to the outcome of Cardenas-Martinez's case.

Having dispensed with the ineffective assistance issue, the Board turned to Cardenas-Martinez's request to reopen the proceedings based on new evidence, in the form of "additional diagnoses of cognitive disabilities and the appointment of his mother as his legal guardian." A.R. 6. The Board denied that request in a single sentence, finding that Cardenas-Martinez "has not shown that consideration of this evidence would change the result." A.R. 6.

Cardenas-Martinez timely petitioned this court for review.

## II.

Whether to reopen a proceeding after it has issued a decision is a matter of BIA discretion. *See* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen . . . is within the discretion of the Board . . . ."); *Lawrence v. Lynch*, 826 F.3d 198, 203 (4th Cir. 2016). We review the BIA's denial of a motion to reopen – including one based on

ineffective assistance claims – only for an abuse of that discretion. *See Barry v. Gonzales*, 445 F.3d 741, 744 (4th Cir. 2006) (applying abuse of discretion standard to denial of motion to reopen based on ineffective assistance of counsel claim); *see also INS v. Doherty*, 502 U.S. 314, 323 (1992) ("[T]he abuse-of-discretion standard applies to motions to reopen regardless of the underlying basis of the [noncitizen's] request [for relief]." (internal quotation marks omitted)). Under that standard, we will grant a petition for review only if a denial of reopening is "arbitrary, capricious, or contrary to law." *Barry*, 445 F.3d at 745; *see id.* at 744 (explaining that BIA denial of reopening is accorded "extreme deference"). For the reasons given below, we find no such abuse of discretion here.

## A.

We begin with Cardenas-Martinez's ineffective assistance claims, governed by the BIA's precedent in *Matter of Lozada*. In that case, the BIA reasoned that any right to counsel afforded a noncitizen in removal proceedings would arise from the Fifth Amendment's Due Process Clause. *Lozada*, 19 I. & N. Dec. at 638. It followed, the BIA held, that a noncitizen could prevail only by showing, first, that counsel's performance was deficient enough to render the proceeding "fundamentally unfair," preventing the noncitizen from "reasonably presenting his case." *Id.*; *see also In re B-B-*, 22 I. & N. Dec. 309, 311 (BIA 1998) ("[T]he respondents must show that the conduct of former counsel was so egregious that it rendered their hearing unfair."). And second, a noncitizen must establish that he was "prejudiced by his [counsel's] performance." *Lozada*, 19 I. & N. Dec. at 638. This prejudice inquiry requires the noncitizen to "establish a *prima facie* showing

13

that he was entitled to [relief from removal]." *Figeroa v. INS*, 886 F.2d 76, 79 (4th Cir. 1989).[6]

1.

Cardenas-Martinez's primary argument on appeal is that he can make the *Lozada* ineffective assistance showing with respect to the failure of his counsel, Moss, to raise before the IJ the issue of his competency and to seek a competency evaluation and safeguards under *Matter of M-A-M-*. In *M-A-M-*, the BIA held that while IJs may presume the competence of noncitizens in removal proceedings, when there are "indicia of incompetency," they must inquire further and determine whether the noncitizen is in fact competent to proceed. 25 I. & N. Dec. at 484. How to make that determination is left largely to the IJ's discretion; in addition to ordering a mental competency evaluation, for instance, an IJ may hold a colloquy with the noncitizen, asking "questions about where the hearing is taking place, the nature of the proceedings, and [his] state of mind." *Id.* at 480–81. If the noncitizen has a "rational and factual understanding of the nature and object of the proceedings," so that he can consult with an attorney and has a "reasonable opportunity to examine and present evidence and cross-examine witnesses," then he is competent to proceed. *Id.* at 484. If not, then the IJ must "prescribe safeguards to protect" his rights, *id.* at 481 (internal quotation marks omitted), again exercising substantial discretion in

---

[6] *Lozada* also imposes certain procedural and evidentiary requirements on noncitizens raising ineffective assistance claims. *See* 19 I. & N. Dec. at 639. The Board found that Cardenas-Martinez had met those requirements, A.R. 3, and they are not at issue on appeal.

14

deciding what procedural safeguards – such as participation by a family member or guardian in the hearing – are appropriate, *id.* at 483.

Against this backdrop, we have no grounds to disturb the BIA's judgment that Cardenas-Martinez cannot establish ineffective assistance in connection with Moss's handling of the mental competency issue under *M-A-M-*. It may be that Moss, who had just filed a PD Request attesting to Cardenas-Martinez's "frail" mental status and resulting inability to answer questions during his USCIS interview, *see* A.R. 305–06, would have better served her client by ensuring that all medical records were before the IJ in advance of the hearing and then raising mental competency as an issue and seeking safeguards under *M-A-M-*. But as the BIA explained, the IJ stepped into any breach created by counsel, *sua sponte* raising the competency question and effectively overriding counsel's disclaimer of the issue. A.R. 359 ("[Y]ou brought up autism, counsel. So I don't have any medical records but I [do] need to be confident that this young man can understand why he's here and what's going on."). She then proceeded to conduct the very colloquy expressly approved by *M-A-M-* as one means of testing competency. *See* 25 I. & N. Dec. at 480; *see also Diop v. Lynch*, 807 F.3d 70, 75 (4th Cir. 2015) (explaining that IJs have "high degree of flexibility and discretion" in testing competency under *M-A-M-*). And it was not until the IJ determined that Cardenas-Martinez in fact was competent that she proceeded with the hearing – exactly as contemplated by *M-A-M-*. Regardless of any shortcomings in counsel's performance, in other words, the IJ undertook the steps required under *M-A-M-* when there are "indicia of incompetency." *See* 25 I. & N. Dec. at 484.

15

Nor did the BIA abuse its discretion when it affirmed the IJ's ultimate determination that Cardenas-Martinez was competent to proceed. Indeed, as counsel confirmed at oral argument, Cardenas-Martinez has not argued otherwise, and is not challenging the underlying competency determination on appeal. The BIA carefully considered the colloquy, concluding, as had the IJ, that nothing about Cardenas-Martinez's responses – including his preliminary misidentification of the government's counsel – indicated that he lacked the ability to participate meaningfully in the proceedings. The BIA also took account of Cardenas-Martinez's testimony at the hearing itself, reviewing the transcript and finding that it evinced an understanding of the proceedings and the ability to accurately answer questions. Whatever may have transpired at the USCIS interview, that is, at this hearing, Cardenas-Martinez proved himself able to participate.

In sum, the BIA acted within its discretion in finding that Cardenas-Martinez could not demonstrate ineffective assistance by Moss in connection with *M-A-M-*. The result might have been different had the IJ not stepped in to conduct an *M-A-M-* colloquy and determine, before proceeding, that Cardenas-Martinez was competent to participate in his hearing. But in light of the IJ's precautions, and on this record, we cannot say that Moss's failure to request an *M-A-M-* hearing or safeguards rendered Cardenas-Martinez's proceedings "fundamentally unfair," *see Lozada*, 19 I. & N. Dec. at 638 – or, more precisely, that the Board was compelled to reach that result.[7]

---

[7] The government also argues that Cardenas-Martinez cannot satisfy *Lozada*'s prejudice requirement because he has not made out a *prima facie* case of eligibility for asylum. *See* Appellee's Br. 49 nn. 22 & 23. The BIA does not appear to have relied on

16

## 2.

We may deal more briefly with Cardenas-Martinez's remaining ineffective assistance claim: that Moss also was ineffective in failing to rely on our decision in *Temu* to support his claim of membership in a particular social group.[8] We agree with the BIA that *Temu* was not on all fours with Cardenas-Martinez's case. In *Temu*, we held that there was a cognizable particular social group composed of individuals in Tanzania "with bipolar disorder who exhibit erratic behavior." 740 F.3d at 892. And while there are similarities between that particular social group and those proposed by Cardenas-Martinez, there also are differences – most importantly, materially different medical conditions and societies. *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 238 (BIA 2014) ("The particular social group analysis does not occur in isolation, but rather in the context of the society out of which the claim for asylum arises."). Failing to argue for that kind of "extension of precedent," we have held in the Sixth Amendment context, does not amount to deficient performance by an attorney. *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).

In any event, however, we have no cause to question the BIA's determination that Cardenas-Martinez cannot satisfy *Lozada*'s prejudice requirement with respect to this

---

this ground in denying reopening, however, so we do not assess it here. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that reviewing court may consider only grounds invoked by agency); *Nken v. Holder*, 585 F.3d 818, 821–23 (4th Cir. 2009) (applying *Chenery* to review of BIA denial of motion to reopen).

[8] Cardenas-Martinez no longer asserts on appeal the other ineffective assistance claims raised before the BIA, regarding Moss's failure to call his mother to testify and to advance before the IJ the three particular social groups proposed in his original asylum application.

17

claim. The IJ assumed, in rendering her decision, that Cardenas-Martinez *had* established his membership in a qualifying particular social group, but nevertheless denied his asylum claim because he had *not* established a nexus between his membership in that group and his alleged persecution. As the Board explained, relying on *Temu* – which addresses particular social groups, not nexus – would do nothing to address that defect, and thus could not have affected the outcome of Cardenas-Martinez's case. So regardless of whether Moss's failure to press *Temu* could be said to constitute ineffective assistance under *Lozada*'s first prong, the Board's decision stands.

**B.**

Cardenas-Martinez also sought reopening on a separate ground, based on two pieces of new evidence: additional medical evidence detailing his cognitive impairments and a state court order declaring him incompetent and appointing his mother as guardian. A motion to reopen based on new evidence will not be granted unless the movant meets a "heavy burden" of presenting evidence that "would likely change the result of the case." *See Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992) (internal quotation marks omitted). Here, the Board found that Cardenas-Martinez had not met that burden, explaining in one sentence that "he has not shown that consideration of [his new] evidence would change the result." A.R. 6. We find no abuse of discretion in that determination.

On appeal, Cardenas-Martinez argues primarily that the Board abused its discretion by failing to provide an adequate explanation for its decision, seeking a remand so that the Board may set out its reasons for finding his evidence non-material. It is true that even in the context of a motion to reopen, where we owe extra deference, a failure by the Board to

18

offer a reasoned explanation for its decision constitutes an abuse of discretion. *See Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009). And when a Board explanation fails to address key evidence and is so conclusory that we can only guess at the reasoning behind it, we have held, a remand is appropriate. *Id.* at 822 (remanding where Board denial of motion to reopen explained only that applicant had "not presented sufficient facts or evidence" to establish his claim, without addressing critical evidence offered in support (internal quotation marks omitted)).

This case is different. We recognize that the Board disposed tersely of Cardenas-Martinez's claim. But in the context of its full opinion, we can discern the BIA's reasoning – the "rational bridge between the record and the agency's legal conclusion." *See Cordova v. Holder*, 759 F.3d 332, 340 (4th Cir. 2014) (internal quotation marks omitted); *cf. Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency explanation adequate where "the agency's path may reasonably be discerned" (internal quotation marks omitted)). The Board already had explained, in connection with Cardenas-Martinez's ineffective assistance claims, that the IJ's ruling turned dispositively on his failure to establish a causal nexus between his disability or cognitive impairments and the persecution he suffered or fears. And Cardenas-Martinez has not shown how his new evidence, directed only at the extent of his cognitive difficulties, would bear on that dispositive holding. Given the Board's earlier discussion, in the context of this particular case, we find its explanation adequate and its decision within its discretion.

\* \* \*

19

As attorney Moss explained in her PD Request on Cardenas-Martinez's behalf, there is a compelling humanitarian case to be made for allowing Cardenas-Martinez to remain in the United States with his mother, who can provide him with the care he needs. Nothing we have said today should be understood to cast doubt on his eligibility for relief in other fora. In particular, were Cardenas-Martinez to reapply for prosecutorial discretion under the new Administration's policy – a possibility the government raised at oral argument – our decision would in no way limit the government's ability to grant such a request. "Thus, although we cannot afford [Cardenas-Martinez] equitable relief, the 'broad discretion exercised by immigration officials,' which remains '[a] principal feature of the removal system,' might still be marshaled to provide [him] relief." *Kuusk*, 732 F.3d at 307 (quoting *Arizona v. United States*, 567 U.S. 387, 396 (2012)).

**III.**

For the reasons given above, the petition is denied.

*DENIED*

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in Judge Harris's fine opinion in this case. The availability of prosecutorial discretion as a possible alternative avenue of relief for petitioner has several virtues. First, it underscores the important role played by the executive branch in the formulation and enforcement of immigration policy. Second, it holds open the possibility of humane resolution of sympathetic petitions such as this one without resort to the strained interpretation of the asylum statute and unwarranted disregard of standards of review that too often characterize these cases. Allowing Cardenas-Martinez to continue in the care of his mother after all this time seems the right thing to do here, and avoids having hard cases make bad law.